## Foundation and Construction Co., Appellant, *v.* Franklin Trust Co. et al.

Argued January 7, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Ralph S. Croskey,* for appellant.—The surety company breached its agreement of September 24, 1928: Barnes v. Alexander, 232 U. S. 117; Valdes v. Larrinaga, 233 U. S. 705; U. S. v. Butterworth-Judson Corporation, 267 U. S. 387; Rosenberger v. Kuesel, 292

Pa. 184; Moore v. Doyle, 85 Pa. Superior Ct. 406; Gray v. Coal & Iron Co., 286 Pa. 11; Baeder v. Tunnell, 285 Pa. 356.

In entering a decree of dismissal in equity, plaintiff is entitled to the benefit of every fact and inference which might have been found or drawn from the testimony: Bucklin v. Davidson, 155 Pa. 362; Rees v. Walton, 204 Pa. 412; Lewis v. Wood, 247 Pa. 545; Walrath v. Trust Co., 101 Pa. Superior Ct. 79.

*W. B. Saul,* of *Saul, Ewing, Remick & Saul,* with him *Edmund R. Finegan,* for appellee.—The ordinary meaning of the word "segregation" is, of course, as the adjudication points out, "to separate or set apart, cut off from others or from the general mass or main body." That effectually ends the argument. But, if it be needed, there is abundant evidence that both parties used the word in its usual sense.

It will be noted that the letter does not merely say "segregation"; it says "further segregation," thus implying that what is meant is a continuation of a practice which had taken place before the letter was written.

OPINION BY MR. JUSTICE KEPHART, February 3, 1932:

The question to be disposed of, which is one of fact, will be briefly stated. On May 4, 1928, the Crillon Corporation made a contract with the Earl Thompson Company for the erection of an apartment hotel in Philadelphia. Pursuant to this contract, $632,500 was deposited in a banking fund with the Franklin Trust Company as trustee, to be distributed in accordance with a disbursing agreement, which provided that moneys so deposited were to be paid out "from time to time to the contractor on architect's certificates approved in writing by the owner and bankers." The National Surety Company executed a bond guaranteeing the completion of the building.

Appellant, a subcontractor to do the foundation work, was not a party to any of the above agreements. For its work, it was to receive $92,400 which was to be paid, $65,000 in cash, and the remainder in bonds. The money in the building fund had been partly segregated to parties engaged in and about the construction of the building, and, on July 3, 1928, the trustee, under proper authority, segregated and earmarked for the appellant $60,000 from this fund in the same manner as other amounts had been set apart. This amount has been paid appellant and is not now in litigation.

After appellant had progressed with its work, it was discovered, in August, 1928, that it would be necessary to do additional work to complete the contract, and for this work it would be entitled to approximately $15,000 additional. The contractor was in financial difficulty, and appellant feared that it would not receive the money for the extra work if it should proceed, although its contract required it to do so. Appellant stopped work and refused to resume unless it had some assurance that it would be paid or protected as to the $5,000 cash balance due it as part of the $65,000, and the additional $15,000. It negotiated with the surety company, the latter having assumed supervision of the building fund, and that company wrote appellant a letter, which furnishes the basis of its present claim. This letter was dated September 24, 1928, and stated that the surety company agreed: "Either to refuse to consent to the further segregation of any part of the building fund now held by the Franklin Trust Company for the reconstruction of such building until you [appellant] have been paid in full, or, if such consent be given, that the first segregation so made should be in the sum of Twenty Thousand [$20,000] dollars for your subcontract......with the understanding, of course, that any disbursements from such fund are and shall be otherwise subject to the terms and conditions of the disbursement agreement."

Appellant thereupon finished the work, and there was due it a balance of $11,758.80. This bill was brought against the surety company and the trustee to enforce an equitable assignment and decree a trust of the money in the building fund. The court below found there was no ground for equitable intervention and dismissed the bill. The only question raised by this appeal is the liability of the surety company and the trustee for payment of the balance due.

In September, 1928, when the letter was written, the unsegregated moneys in the building fund amounted to about $81,900. After the letter was received by the appellant from the surety company, no further segregation was made, either to the appellant or to any other person. However, a large part of this unsegregated fund was paid out after this date under the disbursement agreement. It is admitted these payments were in proper amounts and were paid in compliance with that agreement, but appellant claims that the surety company, by making these payments, breached the terms of the letter or of the contract therein embodied, and thereby made itself liable to appellant.

It is obvious that the only rights the appellant could have against the surety company would be such as would arise under the letter. It might be argued that the agreement therein is not binding on the appellee because there was no consideration for it, inasmuch as the appellant, in promising to complete its work, did not promise to do and has not done anything that it was not already legally obligated to do. However, as this question is not pressed, and is not essential to the determination of this case, we need not consider it.

Assuming there was a consideration for the agreement contained in the letter, the extent of the surety company's undertaking, as it appears therein, still remains to be determined. By that letter, the surety company agreed, first, not to consent to further segregation until appellant had been paid in full, and, second, if such con-

sent was given, or if segregation was made, the appellant should be the first to receive moneys thereunder. By the last paragraph of the letter, the surety company reserved the right to make distribution from the fund in accordance with the disbursement agreement. Plaintiff averred that the surety company made further segregations of the balance of the fund in its hands after the date of the letter, but the proof failed entirely to establish any such contention. No further segregations were made. Appellant now contends the surety company violated the terms of the letter by approving vouchers for payment out of the fund. As these payments were made under the disbursement agreement, they would be proper unless, as appellant contends, "segregation," as used in the letter, meant "payment." The normal meaning of the word is "to separate or set apart, cut off from others or from the general mass or main body." See Webster's New Standard Dictionary. There is nothing in the context of the letter to show a different meaning, nor is there any occasion for here giving it a different meaning than that which it normally has.

The standard for the interpretation of words is their natural meaning to the parties who have contracted at the time and place where the contract is made, considering all the circumstances surrounding it: McMillin v. Titus, 222 Pa. 500. But, as is stated in Williston, volume 2, section 607, page 1169, "This rule has never been recognized as authorizing the interpretation of plain and unambiguous language of a written instrument in accordance with any other meaning than that indicated by the words used in the instrument." To adopt the construction contended for by appellant would require giving to the word "segregate" a meaning not expressed by the terms of the writing used. Words are to be construed according to their primary acceptation unless, from the context of the instrument and the intention of the parties to be collected from it, they appear to be used in a different sense.

Following these rules of construction, appellant has failed to show any breach of contract on which to predicate a right of recovery from the surety company or the trustee. Considering the case most advantageously to the appellant, its claim is based on the agreement contained in the letter, and, from this, it has wholly failed to prove any liability against the appellees.

We might note an additional reason for the failure of the plaintiff's case. It was admitted at the bar of the court that no disbursement could be made from the building fund except on an approved architect's certificate. This, therefore, was a prerequisite to appellant's being entitled to receive any sum through the surety company, and, since it did not have that certificate for the balance of the claim, its case fails.

The assignments of error as discussed above are overruled. The others we consider immaterial.

The decree of the court below, dismissing the bill, is affirmed, at the cost of appellant.