## Urian v. Scranton Life Ins. Co., Appellant.

Argued December 7, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. J. Fitzgerald,* with him *W. Heyward Myers, Jr.,* and *Morgan, Lewis & Bockius,* for appellant.—There is no evidence that the death of the insured was the result of accidental means: Keefer v. Ins. Co., 201 Pa. 448; Hill v. Ins. Co., 209 Pa. 632; Griffith v. Refining Co., 305 Pa. 386; Hesse v. Ins. Co., 299 Pa. 125; Trau v. Ins. Co., 98 Pa. Superior Ct. 89.

There was no evidence of a visible contusion or wound on the exterior of the body.

There is no evidence that the death of the insured occurred as a result of an internal injury proven by an

autopsy to have been fatal: Gottlieb v. Ins. Co., 225 Pa. 102.

The death of the insured resulted from poisoning: Pickett v. Ins. Co., 144 Pa. 79; Levinton v. Ins. Co., 267 Pa. 448; Hesse v. Ins. Co., 299 Pa. 125.

*George J. Edwards, Jr.,* with him *Robert F. Bonner,* for appellee.—The evidence showed that the death of the insured was effected through accidental means: Ford v. Dick, 288 Pa. 140; Continental Ins. Co. v. Delpeuch, 82 Pa. 225; Rosenthal v. Ostrow, 287 Pa. 87; Mut. Accident Assn. v. Barry, 131 U. S. 100; Biehl v. Assurance Corp., 38 Pa. Superior Ct. 110; Pickett v. Ins. Co., 144 Pa. 79.

The pleadings and proofs meet and satisfy the requirements of the contusion-wound-autopsy clause of the riders: West v. MacMillan, 301 Pa. 344; Neal v. Clark, 95 U. S. 704.

The death of the insured did not result from poison within the meaning of the policy: Pickett v. Ins. Co., 144 Pa. 79; Montgomery v. Martin, 294 Pa. 25; Kern's Est., 296 Pa. 348; United States v. Dickson, 40 U. S. 141; Clum v. Casualty Co., 281 Pa. 464; Trexler L. Co. v. Ins. Co., 289 Pa. 13; Mutual Life Ins. Co. v. Packing Co., 263 U. S. 167.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1933:

Plaintiff, as the beneficiary named in two $5,000 insurance policies, issued by defendant on the life of her husband, sued to recover (1) the amount of the policies payable in case of his death, and (2) an equal additional amount, because his death was said to have occurred under circumstances set forth in what are known as accidental death benefit riders, attached to each policy. She recovered a verdict and judgment for $21,700, which included both amounts with interest. Defendant appeals, alleging that no recovery should have been allowed un-

der the riders, and hence that the verdict should be reduced to $10,850.

So far as relevant, the riders provide as follows: "Upon receipt of due proof that the death of the insured occurred while the said policy was in full force and effect, by accidental drowning, or in consequence of bodily injury effected solely through external violent and accidental means, of which injury there is a visible contusion or wound on the exterior of the body, except in case of internal injury if proven by an autopsy to have been fatal; and upon further proof that such death occurred within seventy days after such injury was sustained, and as a direct result thereof, independently and exclusively of all other causes, the Scranton Life Insurance Company will pay an additional amount equal to the amount stated and described on the face of said policy as the amount insured, subject to the further conditions and limitations as follows:

"Further Conditions and Limitations: (1) The accidental death benefit provided for in this Rider shall not be claimed or paid if the death of the insured results directly or indirectly, in whole or in part, from bodily or mental disease; or from automobile racing; or from coal mining operations underground; or from self destruction, whether sane or insane; or from military or naval service in time of war; or from submarine operations; or from aeronautics; or from violation of law; *or from poisoning;* or from any police service whether in a state of riot, war, insurrection or otherwise; or from bodily or mental infirmity; or from residence or travel on land outside the continental limits of the United States of America or the Dominion of Canada; or from ptomaine poisoning; or from infection other than pyogenic infection occurring simultaneously with and in consequence of an accidental wound on the exterior of the body."

The facts in relation to the death of the insured are thus succinctly stated in the opinion of the court below:

"Decedent lived at Llanerch, near Philadelphia, in a home, at the rear of which was a two-car garage. On the morning of September 11, 1930, after eating breakfast, he went out at his usual time, a few minutes before nine o'clock. It was his custom to drive his automobile to his place of business in Philadelphia. He was not seen again until some three hours later, when his small son went into the garage, found it filled with smoke, and his father sitting behind the steering wheel of his automobile. Other persons quickly came, and the testimony showed that the engine of the automobile was not running, but the motor was hot. The gasoline tank was empty. Decedent sat behind the wheel, his hands being greasy, a pair of pliers grasped in one of them and other tools on the dashboard. The hood was up on one side and the fuse case on the dashboard was off. A doctor was summoned and testified that decedent was dead when he arrived, and that he had died of carbon monoxide poisoning. The physician and other witnesses described his flushed cheeks and 'cherry red' lips, which the physician stated invariably accompanied death from this cause."

Defendant avers that, on several grounds, plaintiff was not entitled to recover the double liability provided for by the riders. The court below, after a careful and painstaking consideration of these points, decided each and all of them in favor of plaintiff; without this, she could not have recovered the additional sum. In the main, we are in full accord with its reasoning and conclusions with respect to them, as will appear from our opinion in Florence Urian v. Equitable Life Assurance Society, 310 Pa. 342, but on one point, not arising in that case, we do not agree, and, as the conclusion we reach in regard to it is fatal to plaintiff's claim to recover the double liability provided for by the riders, we shall limit our opinion to a discussion of and a ruling upon that point.

It will be noted that the policy says "The accidental death benefit provided for in this Rider shall not be claimed or paid if the death of the insured results directly or indirectly in whole or in part,......from poisoning."

On this point the court below said: "The word 'poison' is used in many different senses. It has been defined as 'any substance (liquid, solid, or gaseous), which by reason of an inherent deleterious property tends to destroy life or impair health when taken into the system (as into the stomach, blood or lungs).' The death of decedent was from poisoning within this broad definition. But this is not conclusive upon us. 'The standard for the interpretation of words is their natural meaning to the parties who have contracted at the time and place where the contract is made, considering all the circumstances surrounding it;' Foundation and Construction Co. v. Franklin Trust Co., 307 Pa. 10. Ordinary persons in using the word 'poison' have in mind something that is taken internally into the stomach. They do not have in contemplation germ poisons, disease poisons or gas poisons. We believe that the word 'poisoning' in the policy is used in its familiar sense, that is, in the sense of something taken through the mouth into the stomach. The parties in making the contract did not contemplate poison by gas.

"But even if the word 'poisoning' were used in its broader sense so as to include poisoning by gas, we would still hold that death in this case was not from poisoning within the meaning of the policies. In Pickett v. Pacific Ins. Co. [144 Pa. 79], the policy contained a provision that the insurance should not cover death attributable to 'inhalation of gas.' Decedent went down in a well, unwittingly inhaled gas therein located and died. It was held that the provision of the policy applied only to voluntary inhalation of gas and not to involuntary or accidental inhalation. We believe that the same distinction should be made in this case. The word 'poison-

ing' refers to a deliberate act. It may be, and probably is true, that it would include the act of another as well as the act of decedent, but upon the authority of the Pickett Case, it would not include death by poison accidentally taken.

"The fact that the doctor in his testimony said that death was from carbon monoxide poisoning [as it was here] is of no importance. If he had said that death was from uremic poisoning the death would none the less have been from Bright's disease."

Apparently plaintiff does not fully agree with this reasoning; she concedes that if the policy had used the words "from poison," instead of "from poisoning," the defense under consideration would prevail; for, as she argues, the exception, in that event, would "deal with poison as the agency which produces death, whereas, under the language used, the exception is 'confined to deaths which result' from poisoning." It is difficult to appreciate the force of this supposed distinction, for, if the language of the policy referred to the agencies which produced death, necessarily the deaths would result from those agencies; and if deaths resulted from poisoning, the operative poisons would have been the agencies which produced the deaths. Without laying too great a stress upon this reasoning of plaintiff, it is clear therefrom that she concedes poison caused the death of the deceased, and the question we really have to decide is: Whether or not death from "poison" unintentionally taken, is a death "from poisoning?" We are clear that it is. It is not possible to reconcile all the cases on the point, but "According to the weight of authority such an exception [i. e., 'from poison,' in an accident insurance policy] includes a case where the poison was taken by accident or mistake as well as where it was taken by design, although some cases hold the contrary:" 1 C. J. 455.

Many, if not most of the discrepant decisions arose by giving too great weight to the conclusion reached in

other cases which are relied on, without noting the difference in the language of the policies. Others arose by giving undue weight to the rule, to which we adhere, that "If doubt exists as to the meaning [of the language used in an insurance policy] it should be resolved in favor of the insured rather than in the interest of the insurer :" Levinton v. Ohio Farmers Ins. Co., 267 Pa. 448. In a number of the cases elsewhere, the court created the "doubt" by a species of argument which would not be tolerated in any other kind of contract, and then, having thus found the "doubt," resolved it "in favor of the insured." So far as we are concerned, a little further reading of our opinion last referred to, will disclose a rule which is paramount to the clause above quoted: Where "language is clear and unambiguous [it] cannot be construed to mean otherwise than what it says :" Ibid. 452. We have often said this (Bole v. New Hampshire Fire Ins. Co., 159 Pa. 53; Hesse v. Traveler's Ins. Co., 299 Pa. 125; Foundation and Construction Co. v. Franklin Trust Co., 307 Pa. 10), and trust we shall continue to adhere to it, so long as our judicial system provides for an interpretation of contracts made by the litigants, and not to the making of contracts for them.

Practically all of the cases relied on by plaintiff, are based on the leading case of Paul v. Traveler's Ins. Co., 112 N. Y. 472. There the policy provided that it should not extend to death caused by "inhaling gas." It was held that this was ambiguous language and must be construed to mean, as the court below said, a voluntary inhalation, and not an inhalation during sleep. As extremely pertinent to the instant case, however, the court was careful to add (pages 478-9) : "If the policy had said that it was not to extend to any death caused wholly or in part by gas, it would have expressed precisely what the appellant [the insurance company] now says is meant by the present phrase, and there could have been no room for doubt or mistake." This is exactly what the policy in suit does; the language being "from poison-

ing," which resulted in the death of decedent, and not from taking poison. On the other hand, in Early v. Standard Life & Accident Ins. Co., 113 Mich. 58, death from poison was the exception in the policy, and it was held, after reviewing the Paul Case and others in its train, that no recovery could be had, even though the poison was taken accidentlly.

In McGlother v. Provident Mutual Accident Co. of Phila., 89 Fed. 683, the exception in the policy was "death resulting from poison"—a clause in form more favorable to plaintiff here than is the language of the present policy. Nevertheless, the court said, per SANBORN, Circuit Judge (page 686) : "If death from poison unconsciously taken under the belief that it is not poison is not a death from poison, what is it a death from? The whole is greater than any of its parts, and includes them all. Death from poison is greater than, and necessarily includes, death from poison taken in any particular way, because it includes death from poison taken in every way. It includes death from poison taken intentionally or unintentionally, consciously or unconsciously, voluntarily or involuntarily, with or without knowledge that the draft is dangerous, because every species of death from poison is included within the generic term." Where, as here, the language of the policy is clear and unambiguous and excludes death "from poisoning" it does not seem possible to answer that line of reasoning.

Nothing in our own cases compels an opposite conclusion. In Pollock v. U. S. Mutual Accident Assn., 102 Pa. 230, in affirming the opinion of the court below (15 Phila. 247), we held: "Where a policy of insurance in an accident insurance company provides that its benefits shall not extend to death or injury, caused 'by the taking of poison,' an involuntary taking of poison, by mistake, causing death, is within said provision in the policy" and plaintiff did not recover. Perhaps it might have been there said, following the rule of Paul v. Travelers' Ins. Co., supra, that "taking of poison" meant its

voluntary taking; but, in view of the clear and unambiguous language of the policy, the opposite conclusion was reached.

The only opinion of ours in which that case was reviewed, is Pickett v. Pacific Mutual Life Ins. Co., 144 Pa. 79, where "inhalation of gas" was the exception specified in the policy; and, quoting from and following Paul v. Travelers' Ins. Co., supra, we held the language meant a voluntary inhalation, and a recovery was permitted. We distinguished the Pollock Case by saying: "This case is not ruled by Pollock v. Accident Assn., 102 Pa. 230, on which defendant relies. While that case may well stand upon its own peculiar facts, we think the present case is clearly distinguishable in its controlling facts, as well as in the principles applicable to them. In that case, the injury did not result from external, violent, and accidental means. The fatal drug was voluntarily and intentionally taken by the deceased. In deciding that case, this court never could have intended to lay down the broad rule, that in construing an accident policy there is no distinction between external, violent, and accidental causes of death, and those causes in which death results from voluntary acts. What was decided in that case was that, under the various clauses of the policy sued on, there could be no recovery, and it was unimportant whether the means arose from the designing act of the insured or otherwise." Without considering whether or not the explanatory reasons thus expressed are the reasons actually stated in the Pollock Case itself, it suffices that the language "from poisoning," appearing in the present policy, is in no way affected by what is there said.

The Pickett Case has been considered by us on several occasions, but in no way affecting the question here. In Bole v. New Hampshire Fire Ins. Co., 159 Pa. 53, 57, it is cited for the proposition that "the letter [of the exception] was disregarded in order to reach a proper interpretation of a stipulation in the policy." In Zimmer v.

Central Accident Ins. Co., 207 Pa. 472, 476; Ellis v. Metropolitan Life Ins. Co., 228 Pa. 230; Jones v. Commonwealth Casualty Co., 255 Pa. 566, 572, and Fidelity Title & Trust Co. v. Metropolitan Life Ins. Co., 305 Pa. 296, 301, it is cited for the inapplicable proposition that an application for insurance is not admissible in evidence, unless it was attached to the policy issued in accordance therewith.

It is plain to us that where, as here, an accident policy, whose language is clear and unambiguous, states as an exception from liability that which is simply a cause, without any reference therein to a possible act or omission to act by the insured or any other person, which might be, as respects that cause, either intentional or unintentional, no recovery can be had in cases where the injury or death is due to that cause, unless there is, in the policy, some other provision requiring a different conclusion to be reached.

The verdict in this case is reduced to $10,850, and, as thus reduced, the judgment thereon is affirmed.