## Alberga, to use, v. Pennsylvania Indemnity Corporation

*Sigmund H. Steinberg,* for plaintiff; *Francis Chapman,* for defendant.

LEWIS, J., September 13, 1933.—On March 19, 1928, Max J. Colton, the use-plaintiff, while driving a Moon sedan belonging to Clifford J. Alberga, the legal plaintiff, struck and injured one Ethel Wright, at 52d and Market Streets, as a consequence of which she brought suit against Colton in the Municipal Court, as of August Term, 1928, No. 236, and therein after trial recovered a verdict in the sum of $418.25, which was subsequently paid by Colton; action is now brought against the defendant, Pennsylvania Indemnity Corporation, which insured said Moon sedan, to recover the amount so paid, plus counsel fees incurred in defending the Wright suit.

The defendant, on July 25, 1927, issued to Clifford J. Alberga, as the insured, its policy of insurance effective August 3, 1927, for 1 year from that date, which contained a provision to which all parties aptly refer and to which we shall refer as the "omnibus coverage clause". This clause, which all parties concede must control the result of the present litigation, is as follows: "Addi-

tional Interests: Coverage herein provided shall be available to any person, firm or corporation legally responsible for the operation of any automobile insured hereunder and to any person or persons riding in or legally operating same with consent of insured, or, if insured be an individual, with permission of an adult member (other than a chauffeur or domestic servant) of his household. This coverage shall not extend to any public garage, repair shop, sales agency or service station and/or employes thereof."

The matter was heard by the court without a jury, and the factual questions may be briefly summarized as follows:

The use-plaintiff, Colton, on the day of the accident, conducted a place of business at the southeast corner of 53d and Walnut Streets, Philadelphia, where oil, gasoline, tires, and other automobile accessories were sold. Gasoline tanks were located in the basement of the building; gasoline pumps were on the curb of the street fronting the place of business. It was conceded that there was no driveway into this place of business and that no automobiles were stored there. Two additional places of business were conducted in the City of Philadelphia by two brothers-in-law of the use-plaintiff, but in the latter's name, one at Cobbs Creek Parkway and Church Lane, where there was a greasing rack, in which Colton had no money invested and in which his name was being used for the purpose of prestige. Apparently he had some limited interest therein but just what the evidence does not disclose.

On the day in question, Colton had borrowed the car for the purpose of delivering a tire which he had sold from his place of business at 53d and Walnut Streets, and was at the same time requested by Alberga to take his automobile somewhere to be greased, and he intended taking it to Cobbs Creek Parkway and Church Lane for that purpose, for which he was to receive no compensation. The accident happened while he was delivering the tire.

It is conceded that Colton was driving the car with the consent of Alberga, that demand was made upon the defendant insurance company to defend the Wright suit, and that it refused to do so. No question was raised as to the propriety of the manner in which the action is brought, nor has defendant seriously pressed the contention that recovery is barred by virtue of any business conducted by the use-plaintiff other than at 53d and Walnut Streets, presumably because the use-plaintiff's uncontradicted evidence, when called by defendant for cross-examination, was that he did not own the other business. Defendant, however, does very strenuously contend that the business conducted by the use-plaintiff at 53d and Walnut Streets constitutes a "service station" within the meaning of the exception to the omnibus coverage clause and that recovery by either Colton or Alberga is therefore barred. We find ourselves unable to agree with that contention.

The Supreme Court has recently reminded us that: "The standard for the interpretation of words is their natural meaning to the parties who have contracted at the time and place where the contract is made, considering all the circumstances surrounding it": Foundation & Construction Co v. Franklin Trust Co. et al., 307 Pa. 10, 15.

All the provisions of an agreement must be considered in determining its meaning. Hence, if the language of a particular clause would, if standing alone, determine a point in controversy in a particular way, it may be overcome when the agreement is considered in its entirety: Hild v. Dunn, 310 Pa. 289; and we bear in mind that the primary rule of construction is to give effect to the purpose and intent of the parties.

In our case the rules referred to, instead of resulting in any conflict, all lead to the same conclusion, so that, whether we look merely to the normal meaning

of the term "service station", or to the context in which that term is found, or to the purpose which was sought to be accomplished by the exception to the omnibus coverage clause, the same conclusion is reached: that a store engaged in selling automobile accessories, even if it also sells gasoline from an outside or pavement pump, is not a service station and therefore not within the exception.

The term "service station" is of comparatively recent origin and is not to be found in any of the dictionaries, excepting the new Century Dictionary Supplement, where it is defined as follows: "A station or establishment for the accommodation of those requiring service of some kind, as the supplying of parts for the making of repairs on automobiles, radio apparatus, etc."

Such is the normal meaning of the term, and as applied to automobiles "service station" has an even more definite meaning: it is a shop which is the universal concomitant of every sales agency or automobile dealer, as the place where the particular make of automobile dealt in by such agency is "serviced" —that is, inspected and adjusted during the first 3 months of its life, and where, during the rest of its life, the owner is sure of obtaining parts for that particular model and mechanics skilled in their replacement and in repairs to that particular make of car. That is the distinction between a service station and an ordinary repair shop (a place where all makes of automobiles are repaired), and we have no doubt that it was in the sense above described that the term "service station" is used in the exception to the omnibus coverage clause. That becomes even more evident when we consider the context and the purpose of the exception.

We agree with Ryder on Automobile Insurance, who, as quoted by the defendant, states: "Formerly it was the practice to include as additional assureds in the policy, the names of the wife, the son, or other person who might drive the car. But usually the owner neglected to take this precaution (and to pay the small additional premium required) and numerous complaints arose as a result of the misunderstanding. The companies finally decided to adopt the so-called 'omnibus coverage' clause which in substance automatically extends the protection of the policy to any other person legally operating the insured automobile provided he has the permission of the assured, except that the coverage is not extended to garages, dealers, or service stations, nor is it extended to a purchaser, transferee, or assignee"; and we agree with the contention of the learned and able counsel for defendant "that automobile insurance is intended to follow the car rather than the person of the named assured. In other words, if the named assured has an accident when he is driving another car than that covered by the policy, he is not protected. As is pointed out by Huddy in his Encyclopedia of Automobile Law [9th ed., § 314, vol. 13-14, p. 405], the omnibus coverage clause gives additional assureds other than the person named in the liability policy as assured, with certain specified limitations, the benefit of the policy. The term 'specified limitations' obviously refers to the exclusions in the omnibus coverage clause, which is the subject of this controversy", and the obvious reason for this exception to, or exclusion from, the omnibus coverage clause of the particular businesses referred to is, as stated by defendant's witness Branston, that there is a difference in hazard between the use of automobiles by persons generally and their use by garages, sales agencies, and service stations and that "the hazard is primarily based upon the fact that employes handle and operate the customers' cars either on the premises or off the premises."

We believe the latter explanation and the context of the exception indicate quite clearly that the term "service station" was not used as meaning a place where automobile accessories were sold or as meaning a gasoline filling station; at such places there is no occasion for employes to "handle or operate the cus-

tomers' cars, either on or off the premises", which is the particular hazard involved in the exception; whereas, if we apply to "service station" the meaning previously discussed, then it is similar to the other three of the four exceptions, to wit: "garage, repair shop, sales agency, or service station", in that each of them, while slightly different from the other, nevertheless has the same common attribute and involves the same hazard, to wit: that the automobile is left there for a considerable length of time, during which employes handle and operate the customers' cars either on or off the premises in testing, demonstrating, etc.

"Sales agency", as used in the exception, is not to be taken literally as a place where articles are sold on commission, but as meaning an "automobile sales agency" or "automobile dealer", and the term "service station" which immediately follows the term "sales agency" should be construed to mean a shop where "service" is dispensed—the service being the opportunity to get the particular parts and mechanical skill, inspection, and adjustment required by the make of car dealt in by that sales agency. We conclude that a store for the sale of automobile accessories is not a service station within the purview of the exception to the omnibus coverage clause, even though it also sells gasoline from a pavement pump.

It may be that a gasoline filling station is sometimes referred to as a service station, but if so, it is the unusual and not the normal meaning of the term. Even if we had any doubt as to the meaning of this term (which we have not), we would be required to resolve the doubt against the insurance company. The rule which prevails in Pennsylvania is that of strict construction against a compensated surety; and in the case of insurance companies the policy must be construed most strongly against the insurer and in favor of the insured: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213; Urian v. Scranton Life Ins. Co., 310 Pa. 144.

On our interpretation of the policy plaintiff is entitled to recover the amount paid to Ethel Wright on her judgment, to wit, $418.25, and counsel fees incurred in defending that suit. The amount so recoverable as fees presents the other question in the case.

In his statement of claim plaintiff averred the fair value of the services rendered and incurred to be $200. The affidavit of defense denied this to be the fair value, but contained no counter-allegation as to this value. These paragraphs of the statement of claim and affidavit of defense were offered in evidence and are the only evidence in the record as to the value of the service. If the answer was sufficient to put plaintiff to his proof, no award for fees can be made to him; otherwise he is entitled to the sum of $200 as part of his judgment. We believe this averment of the statement was not sufficiently denied, and that, under the Practice Act and the decisions, plaintiff's allegation must for that reason be taken as admitted.

Where a defendant denies the value as averred in the statement, he must state the real value: Eberbach v. Clyde Steamship Co., 74 Pa. Superior Ct. 79.

This rule has been specifically applied to the allegation of the value of professional services: Archbald v. Stone, 91 Pa. Superior Ct. 268.

We therefore find for the plaintiff in the sum of $418.25, plus interest of $66.78, plus $200, the reasonable value of the counsel fee incurred in the defense of the Wright judgment, or a total of $685.03.