## TREASURE CRAFT JEWELERS, INC.

v.

## JEFFERSON INSURANCE COMPANY OF NEW YORK.

### Civ. A. No. 76–995.

United States District Court,
E. D. Pennsylvania.

April 27, 1977.

On Motion to Alter or Amend
Judgment May 16, 1977.

M. Stuart Goldin, Philadelphia, Pa., for plaintiff.

Richard W. Hopkins, Philadelphia, Pa., for defendant.

## OPINION

GORBEY, District Judge.

The $25,000 question in this case is: "Is the risk of loss from burglary of property from premises located and utilized by plaintiff as a jewelry store at the Southampton Shopping Center, Southampton, Pennsylvania, covered by a scheduled personal property floater policy, bearing no. SP 429342, issued by the defendant?".

The Jewelers' Block Coverage Form NC–8A, attached to and forming a part of the policy provides, *inter alia*:

"This company does insure the aforementioned Insured, whose premises are located 7022 Bristol Pike, Levittown, Pennsylvania.

*Limitations of Liability.*

2. The maximum liability of the Company resulting from any one loss, disaster or casualty is limited to:

A. *$100,000.* in respect of property of the Insured's premises as described herein; . . .

E. *$25,000.00* in respect of property elsewhere and not included in Clauses (A) . . . above or otherwise limited herein.

*Property Insured*

3. The property insured is as follows:

A. Pearls, precious and semi-precious stones, jewels, jewelry, watches and watch movements, gold, silver, platinum, other precious metals and alloys and other stock usual to the conduct of the Insured's business, owned by the Insured;

B. Property as above described, delivered or entrusted to the Insured by others who are not dealers in such property or otherwise engaged in the jewelry trade;

C. Property as above described, delivered or entrusted to the Insured by others who are dealers in such property or otherwise engaged in the jewelry trade, but only to the extent of the Insured's own actual interest therein because of money actually advanced

thereon, or legal liability for loss of or damage thereto."

Among the five endorsements added to the policy is: *"Property in Custody of Personnel Away From Premises Endorsement* (Applicable When Policy Limit 2 (E) Exceeds $5,000) . . .". "It is understood and agreed that the liability of the Company for property in the custody of the Insured, any employee, member of the firm, or officer of the corporation or salesman *outside the premises of the Insured (as referred to in this policy)* is limited to $5,000 unless the name of such individual is listed hereunder. Edward McMenamen, Donald Bound, Paul Metzner, Dan Monteith." (Emphasis added)

Plaintiff has filed the affidavit of Donald J. Bound, apparently the same individual referred to above as Donald Bound. In this he deposes and says:

"1. At all relevant times and at present he was and is President and chief executive officer of the plaintiff, and of the other insureds named in the policy issued by defendant Jefferson Insurance Company of New York, being number SP 429342.

2. As said President and chief executive officer he at all relevant times had and has supervisory powers over the operation of the Southampton store of plaintiff.

3. Since Donald J. Bound had overall supervisory powers of the said Southampton store and in fact actively at all relevant times exercised supervisory powers over said store and in fact spent a substantial amount of time at said store, the contents of the said store were in his custody within the meaning of the policy endorsement relating thereto."

It is on the basis of this affidavit and 2. E. *Limitations of Liability,* as previously stated, that plaintiff is claiming the sum of $25,000.

Defendant denies all liability relying upon Clause 7 under Insuring Conditions which provides:

"Unless endorsed hereon, no assignment of or change of interest under this Policy shall bind the Company, *nor shall coverage apply to additional locations of the Insured* or to changes in or additions to the *premises of the Insured specified in Section 1 . . ."* (Emphasis added)

Plaintiff points to "2. E. *$25,000.00* in respect of property elsewhere . . ." and insists that plaintiff's property in the Southampton Shopping Center, Southampton, Pennsylvania, is indeed "property elsewhere" from 7022 Bristol Pike, Levittown, Pennsylvania.

As to the aforementioned Clause 7 relied upon by plaintiff, it urges that a reasonable construction of said paragraph "should be that the One Hundred Thousand ($100,000) Dollars Coverage of 2 A. on the Levittown premises should not apply to additional locations or to a change of location unless by written endorsement to the policy. Reasonably construing Clause 7, it is nothing more than an attempt by the insurer to impose home office control upon attempts to insure the contents of additional locations for One Hundred Thousand ($100,000) Dollars without endorsement.".

Plaintiff also urges that "Clause 7 as applied to Clause E would create an ambiguity which must be resolved in favor of the insured." (Page 11, plaintiff's memorandum of law in opposition to motion for summary judgment).

Defendant, of course, denies that there is any ambiguity as respects this contract as it relates to the issue involved herein.

The principles of law which are urged by counsel are well settled.

█ Insurance contracts are regarded as contracts of adhesion, their multitudinous provisions being written by the insurer for an insured who has no bargaining power, and who must take it or leave it. Thus, there developed the rule that any ambiguities in the contract must be resolved strictly against the insurer. *Patton v. Patton,* 413 Pa. 566, 198 A.2d 578 (1964); *Hionis v. Northern Mutual Insurance Company. et al.,* 230 Pa.Super. 511, 327 A.2d 363 (1974). This principle has been applied to insurance

contracts generally, including life insurance contracts. *Thomas v. Metroplitan Life Ins. Co.*, 388 Pa. 499, 131 A.2d 600 (1957). Considering the reasons for the rule, it would appear that it would not apply to those aspects of an insurance policy such as specific property which is to be covered in the policy, and the amount of insurance to apply thereto. In most situations, those matters are determined by the insured or as a result of negotiation between the parties.

■ Another principle of law, sometimes overlooked, is a principle that the aforementioned rule of strict construction against the insurance company has no application where the language is clear and unambiguous. *Sidebothom v. Metropolitan Life Ins. Co.*, 339 Pa. 124, 14 A.2d 131 (1940). Or, stated differently, a doubt cannot be created for the purpose of resolving it in favor of the insured. *McCowley v. Northamerican Accident Ins. Co.*, 150 Pa.Super. 540, 29 A.2d 215 (1943); *Weiner v. Metropolitan Life Ins. Co.*, 416 F.Supp. 551 (E.D.Pa.1976); *Pennsylvania Mfrs.' Ass'n. Ins. Co. v. Aetna C. & S. Ins. Co.*, 426 Pa. 453, 233 A.2d 548 (1967); *Holliday v. St. Paul Mercury Indemnity Company*, 153 Pa.Super. 59, 33 A.2d 449 (1943); *Quigley v. Western & Southern Life Ins. Co.*, 136 Pa.Super. 27, 7 A.2d 70 (1939).

The significant words of Mr. Justice Simpson writing for the court in 1933 are worthy of repetition.

"Many, if not most of the discrepant decisions arose by giving too great weight to the conclusion reached in other cases which are relied on, without noting the difference in the language of the policies. Others arose by giving undue weight to the rule, to which we adhere, that 'If doubt exists as to the meaning [of the language used in an insurance policy] it should be resolved in favor of the insured rather than in the interest of the insurer:' *Levinton v. Ohio Farmers Ins. Co.*, 267 Pa. 448, 110 A. 295, 296. In a number of the cases elsewhere, the court created the 'doubt' by a species of argument which would not be tolerated in any other kind of contract, and then, having thus found

the 'doubt,' resolved it 'in favor of the insured.' So far as we are concerned, a little further reading of our opinion last referred to, will disclose a rule which is paramount to the clause above quoted: Where 'language is clear and unambiguous [it] cannot be construed to mean otherwise than what it says:' Ibid. 452, 110 A. 295. We have often said this (*Bole v. New Hampshire Fire Ins. Co.*, 159 Pa. 53, 28 A. 205; *Hesse v. Traveler's Ins. Co.*, 299 Pa. 125, 149 A. 96; *Foundation and Construction Co. v. Franklin Trust Co.*, 307 Pa. 10, 160 A. 711), and trust we shall continue to adhere to it, so long as our judicial system provides for an interpretation of contracts made by the litigants, and not to the making of contracts for them."

*Urian v. Scranton Life Ins. Co., Appellant*, 310 Pa. 144, 150–151, 165 A. 21, 22.

■ It is likewise established that the policy must be read in its entirety; it should be construed according to the plain meaning of the words used, so as to avoid ambiguity while at the same time giving effect to all of its provisions. *Masters v. Celina Mutual Insurance Company*, 209 Pa. Super. 111, 224 A.2d 774 (1966).

"The language in an insurance contract is construed by its usual and ordinary meaning so that a person of ordinary intelligence can understand *what is being insured* and for how long . . ." (Emphasis added)

*Hannon Motor Lines, Inc. v. Liberty Mutual Insurance Co.*, 214 F.Supp. 250 (W.D. Pa.1963).

"A court may not rewrite policies of insurance . . ." *Globe Indemnity Co. v. Liberty Ins. Co.*, 138 F.2d 180–184 (3d Cir. 1943);

nor can the insurer's obligation be enlarged or varied by judicial construction. *In re Podolsky*, 115 F.2d 965 (3d Cir. 1940).

"The parties had the right to make their own contract, and it is not the function of this Court to rewrite it, or to give it a construction in conflict with that which

**1164**

accords with the accepted and plain meaning of the language used." *Topkis v. Rosenzweig,* 333 Pa. 529, 5 A.2d 100, 101 (1939).

The court has "no right to add anything to the insurance contract or to give it a construction that renders any part of it useless and unnecessary, if it can be reasonably construed just as written and without any change, addition or elimination." *Quigley v. Western & Southern Life Ins. Co., supra.*

■ Just as it is not permissible to lift one sentence from the policy and to try to attach a different meaning to that sentence standing alone, *Kehoe et al. v. Automobile Underwriters, Inc.,* 12 F.Supp. 14 (M.D.Pa. 1935), it would not be permissible to lift one clause out of the insurance contract in this case and to attach a different meaning to that paragraph considered in isolation from the rest.

Plaintiff has insisted that even if there is no ambiguity the burden is on the insurer to prove that the insured was aware of the exclusion of limitations and that the effect thereof was explained to the insured, citing as authority *Hionis v. Northern Mutual Insurance Company, et al., supra.* It therefore concludes that an issue of fact must be determined, and this would preclude summary judgment. The language from that case, extracted by the plaintiff at page 12 of his memorandum, must be interpreted in the light of the facts of the particular case. When so considered, it has no application to the facts of the case *sub judice,* for in that case the litigation arose because the agent failed to provide, without explanation, coverage which had been requested by the insured. No such problem is presented here.

With respect to a defense based on an exception or exclusion with the burden of proof on the insurer, *Weissman v. Prashker,* 405 Pa. 226, 233, 175 A.2d 63 (1961), it must be noted that there is a sharp distinction between a defense based upon an exception or exclusion on the one hand, and a risk not included on the other, a distinction emphasized particularly in life insurance contract cases involving an incontestability clause. *Metropolitan Life Ins. Co. v. Conway,* 252 N.Y. 449, 169 N.E. 642 (1930). The defense here is not based upon an exception or an exclusion; it is based upon the simple contention that the language of the policy clearly and unambiguously shows that the risk of burglary at the Southampton jewelry store was not covered by the contract.

We may say here, as did the court in *Blocker v. Aetna Casualty and Surety Company,* 232 Pa.Super. 111, 332 A.2d 476, 477–478 (1975):

"The single issue for our determination will of course be resolved by our analysis of the terms and conditions of the insurance policy issued by the appellant [defendant]. This analysis of an insurance policy, like the interpretation of any other written contract is a question of law for the court. *Bole v. New Hampshire Fire Insurance Company,* 159 Pa. 53, 28 A. 205 (1895)."

The first clause of Jewelers' Block Coverage Form NC–8A, in Clause 1, states: ". . . THIS COMPANY DOES INSURE the aforementioned Insured, whose premises are located at 7022 Bristol Pike, Levittown, Pennsylvania."

■ It is a sound and well established rule that the location at which the subject matter of an insurance policy is exposed to the peril insured against, is necessary for the writing of a policy covering burglary losses just as it is for the writing of a fire insurance policy. The insurance company must have knowledge of this, as well as other material facts, in order that it as a prudent insurer, may make an intelligent decision as to whether to accept the risk or not, and if it decides to assume the risk, the amount of the premium which should be charged.

It has been held "that the specified location of the insured property is so important and so essential to the risk assumed, that coverage does not exist to casualty occur-

ring at a different place or location." *Morgan Smith Automotive Products, Inc. v. Continental Insurance Co.*, 418 Pa. 190, 210 A.2d 273, 275 (1965). *See also* Volume IV, *Appleman Insurance Law and Practice*, § 2350, p. 361.

Turning to the policy we find that immediately under the location of the premises appears:

"2. The maximum liability of the Company resulting from any one loss, disaster or casualty is limited to:

A. $100,000 in respect of property at the Insured's premises as described herein."

Since the only premises described "herein" is 7022 Bristol Pike, Levittown, Pennsylvania, the risk of loss of property elsewhere at another location of the plaintiff, is a risk not assumed by the contract.

It is instructive to look at the Proposal for Jewelers' Block Policy a part of the contract attached to plaintiff's complaint. This is the part where the insurer has asked questions the answers to which are to enable it to appraise intelligently the risk before determining whether to accept it or not, and if so, what premium should be charged. In Clause 1 c, we find: "Our premises are located at 1st Floor & Basement 7022 Bristol Pike, Levittown, Bucks County, Pa.".

Turning now to Clause 2, we read:

"The maximum liability of the Company resulting from any one loss, disaster or casualty is limited to: E. $25,000.00 in respect of property elsewhere and not included in Clauses (A) . . . or otherwise limited herein."

It is true, as plaintiff argues, that property of the plaintiff in Southampton Shopping Center, Southampton, Pennsylvania, is obviously property "elsewhere" than Levittown. However, the meaning of "property elsewhere" must be related to a policy which covered the premises of the insured at the location given by the insured.

Since this is a Jewelers' Block Policy, it could be anticipated, as indeed it was, that some jewelry which would normally be kept at the described premises, would for quite legitimate business reasons, be removed from the store by an officer, employee, or salesman, therefore subject to risks entirely different from the risk at the described premises in Levittown. That this was anticipated is clearly shown by the aforementioned 2 E of the Limitations of Liability which limited liability to $25,000.00.

When we examine the second page of the Proposal, we read:

"11. Property outside our Premises as set forth in Question 1 c during the last 12 months:

a. In the custody or control of the Proposer, Employees, Members of the Firm or Officers of the Corporation or Salesmen:

1. In cities or towns in which the Proposer's premises are situated.

| NAME | NUMBER OF DAYS | AVERAGE AMOUNT | MAXIMUM AMOUNT |
|---|---|---|---|
| Edward McMenamen | 156 days 3 per wk. | $5,000 | $25,000 |
| Paul Metzner | 60 days 5 per month | $5,000 | $25,000 |
| Dan Monteith | 104 days 2 per wk. | $10,000 | $25,000 |
| Donald Bound | 60 days 5 per month | $5,000 | $25,000 |

2. Elsewhere in the states of United States, the District of Columbia, Canada and Puerto Rico.

| NAME | NUMBER OF DAYS | AVERAGE AMOUNT | MAXIMUM AMOUNT |
|---|---|---|---|
| Edward McMenamen | 4/mo. | $5,000 | $25,000 |
| Paul Metzner | 4/mo. | $5,000 | $25,000 |
| Dan Monteith | 4/mo. | $16,000 | $25,000 |
| Donald Bound | 4/mo. | $5,000 | $25,000" |

It is very significant, in view of the affidavit of Donald J. Bound that the information asked for by the prospective insurer, produced the answer that the number of days during the year when he had custody of property "outside the premises" in Levit-

town was 60 days, the average value of the property during those days was $5,000, and the maximum was $25,000; and about four times a month, elsewhere in the United States, the District of Columbia, Canada and Puerto Rico, he had property, the average value of which was $5,000 and the maximum was $25,000.

In the aforesaid affidavit, Donald J. Bound stated that "As said President and chief executive officer he at all relevant times had and has supervisory powers over the operation of the Southampton store of plaintiff" and that "Since Donald J. Bound had overall supervisory powers of the said Southampton store and in fact actively at all relevant times exercised supervisory powers over said store and in fact spent a substantial amount of time at said store, the contents of the said store were in his custody within the meaning of the policy endorsement relating thereto".

In paragraph 4 of plaintiff's complaint, it is stated:

"On or about the night of February 6 and 7, 1976, the plaintiff's jewelry store located at the Southampton Shopping Center, Southampton, Pennsylvania, was burglarized by persons unknown to the plaintiff, resulting in a loss of merchandise from the said store premises and the safe located therein, in the sum of Ninety-Four Thousand Three Hundred Sixty-Nine ($94,369.00) Dollars as follows . . ."

According to his affidavit, he, as president and chief executive officer, had custody of the contents of the Southampton store. If he had custody by virtue of his offices, he had custody more than 4 or 5 times a month and the maximum amount of value at any one time would not be $25,-000.00 as represented in the Proposal but would be the · · ·imum value of the stock of goods in that store, which at the time of the burglary was at least $94,369.00. On the assumption that the response as to maximum value of merchandise in his possession at any one time was truthful, the conclusion is irresistible that the jewelry of that value was from the stock of jewelry in the Levittown premises.

Page 4 of the Proposal is quite revealing. Under "Description of Premises", appears: "3. Give names and addresses of *other locations of the Proposer* and of other concerns engaged in the Jewelry Trade under the same ownership or management as the Proposer and not included in this Proposal" (Emphasis added). The answer was "None". Since the only location given by the proposer in the proposal is the Levittown premises, it is difficult to reconcile the negative answer with the allegation in paragraph 4 of the complaint with respect to: "The plaintiff's jewelry store located at the Southampton Shopping Center, Southampton, Pennsylvania . . ."

Additional support for the conclusion that the risk of burglary at Southampton premises is not included in the policy, is the very specific and unambiguous Clause 7 which states:

"Unless endorsed hereon, no assignment of or change of interest under this Policy shall bind the Company, *nor shall coverage apply to additional locations* of the Insured or to changes in or additions to the premises of the Insured specified in Section 1."

(Emphasis added)

It is quite obvious why such provision was contained in the policy. If the insurer is to remain solvent, it must be able to evaluate the risk of theft before it assumes liability for theft of jewelry at a different location than described in the proposal.

Accordingly, the court concludes that there is no ambiguity in the policy with respect to the property covered by the contract, nor any ambiguity with respect to property not covered by the policy. The risk of loss by burglary from premises at the Southampton Shopping Center was a risk not included and no additional premium paid therefor, consequently defendant's motion for summary judgment must be granted.

## ON MOTION TO ALTER OR AMEND JUDGMENT

The plaintiff has filed a motion to alter or amend judgment. A brief review of the facts follows.

The complaint was filed on March 31, 1976; by stipulation of counsel, approved by the court, the time for filing an answer or to otherwise plead was extended to May 17, 1976. The answer was filed May 10, 1976. On January 24, 1977, pursuant to a pretrial conference, defendant filed a motion for summary judgment. Plaintiff filed a response thereto on January 28, 1977, supported by the affidavit of Donald J. Bound, President of the plaintiff company, filed on January 24, 1977.

On February 10, 1977, defendant filed notice of oral deposition of Donald J. Bound to be taken on February 24, 1977. The deposition was filed on March 16, 1977. On April 27, 1977, summary judgment was granted in favor of the defendant.

With an alacrity which would certainly have been commendable had it followed the filing of the deposition on March 16, 1977, instead of the adverse judgment on April 27, 1977, plaintiff on May 6, 1977, filed the aforesaid motion to alter or amend judgment, the thrust of the complaint being that the court in its opinion, made no reference to the deposition of Donald J. Bound, or its contents.

Since it is the obligation of counsel, not the court, to supplement a response to a motion for summary judgment if subsequent events are deemed to be supportive of the litigant's position, it is possible to conclude that counsel found nothing in the deposition of 108 pages which added anything favorable to the plaintiff that was not already covered in the affidavit referred to in the court's opinion.

A careful review of the deposition confirms the court's conclusion that the deposition contains nothing more favorable to plaintiff than is contained in the affidavit of the same person. Page after page of testimony, including those referred to in paragraph 3 of plaintiff's motion, pages 47, 48 to 50, 52 to 57, 84, 86 to 90, are merely supportive of the broad assertion as to custody which is found in the affidavit. In one respect the deposition weakens the effect of the affidavit should custody be the crucial point, as it would warrant the conclusion that the manager of the Southampton location, brother of Donald J. Bound, shared that custody along with the wife of plaintiff's president, and at least two employees all of whom had the combination to the safe in which jewelry was placed. (Deposition, pages 12, 13, 15, 48–50, 51, 80)

However, none of that is important in view of the court's interpretation of the contract, for, assuming arguendo that Donald J. Bound, President of plaintiff company, had custody of property from the insured premises at Levittown, the policy sued upon clearly states in Clause 7: "nor shall coverage apply to additional locations of the Insured".

It is conceded that the Southampton store, where the burglary took place, is an additional location of the insured. Therefore, paragraph 2 E which affords protection with respect to "Property in Custody of Personnel Away From Premises" in custody of (others) and Donald J. Bound, must be interpreted as covering jewelry from the insured's Levittown store, in custody of Donald J. Bound, which is not kept at an additional location of the insured.

It is obvious that the risk of jewelry burglary is infinitely greater at a known public situs where large amounts of jewelry are expected to be present, than the risk of jewelry burglary from an unknown or constantly changing situs. It is perfectly logical, therefore, that there should be, as there was, a contractual provision that coverage under the policy, which includes its endorsements, does not apply to additional locations of the insured.

It is interesting and instructive to note the testimony of Mr. Bound, at page 79–80: ". . .—the shop needed diamonds for orders that couldn't be held up, and so I had my wife bring the diamonds home for me, and I worked on the diamonds at home in the afternoon or so. That Fri-

day night I was going to bring the box of diamonds into the office and put them in the Levittown store—the Southampton store; excuse me. I was going to put them in the Southampton store since it was the closest to my home, and lock them in the safe over night for the weekend.

And I decided, 'Well, we're not going to go anyplace this weekend because I don't feel that good yet.' I figured I'll hide them. I had a place to hide them there, and that's what I was going to do. And if it wasn't for that, the diamonds also would have been taken in addition to that. There probably were about another 75—50 to 75,000 in diamonds there. We were very fortunate."

The significance of the "additional location" provision in paragraph 7 of the policy is also emphasized by the fact that paragraphs 14 and 15 of the proposal for insurance, called for information which related to the premises protection at the Levittown location, including electrical burglar alarm systems, and the safe or vault which would be utilized.

Thus, if any property of plaintiff was to be taken to an additional location the applicant would know that the insurer would most certainly want similar information with respect to the risk of burglary at such additional location before it would assume such risk.

There is no allegation in the complaint that the officer who applied for the policy on behalf of plaintiff was illiterate, unable to read the English language, or was prevented by the insurer's agent from reading the policy and its various endorsements.

In the deposition at pages 94, 96, Donald J. Bound testified that it was his signature that appeared on the line marked "signature of proposer"; that he was present when the application was filled out, and that the insurance agent, Joe Proto, whose handwriting appeared in various places in the contract, asked the questions necessary to enable him to fill out the application and prepare the several endorsements.

The court abides by its original conclusion that the contract did not cover the risk of burglary of jewelry taken from the Levittown insured premises to the uninsured additional location at Southampton. Accordingly, the motion is denied.