**Helen M. HICKEY**

v.

**CARPENTERS' HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY.**

Civ. A. No. 79–2873.

United States District Court, E. D. Pennsylvania.

Feb. 13, 1980.

F. Kirk Adams, Springfield, Pa., for plaintiff.

Thomas W. Jennings, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Roy D. Hickey was a member of the United Brotherhood of Carpenters and Joiners of America. Following his death on February 20, 1979, his wife, the plaintiff, applied to defendant Carpenters' Health and Welfare Fund for a $7,500 death benefit, in addition to certain other benefits. Defendant denied plaintiff's request on the grounds that her husband was not an "active covered employee" within the meaning of the Plan at the time of his death. Plaintiff's appeal to the Fund's Board of Trustees proved unsuccessful, and she instituted suit in the Court of Common Pleas of Delaware County, Pennsylvania. Defendant thereafter removed the case to this court. The parties have now filed cross-motions for summary judgment.[1] Because we find that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment will be granted.

The Plan of Benefits of the Carpenters' Health and Welfare Fund of Philadelphia and Vicinity, Exhibit A–1 to defendant's motion for summary judgment (hereinafter Plan), provides that "[a]t the death of an Active Covered Employee from any cause, a death benefit of $7,500 will be paid to his beneficiary." Plan § 2.02. The Plan further provides that " 'Active Covered Employee' means at the beginning of any Benefit Period a person who then meets all of the following requirements: (a) He is in the Eligible Class, and (b) Either or both of the Work Periods defined in relation to such Benefit Period were qualifying Work Periods for him; . . ." *Id.* § 1.18.

Benefit Periods are six-month consecutive periods commencing on May 1 and November 1 of each year. Because Hickey died on February 20, 1979, the applicable Benefit Period began on November 1, 1978. The relevant Work Periods are therefore the six-month period from February 1, 1978 to July 31, 1978, and the twelve month period from August 1, 1977 to July 31, 1978. *Id.* § 1.16. A "Qualifying Work Period" is defined as "a six-month Work Period in which [an employee] has at least 450 Credited Hours, or a 12-month Work Period in which he has at least 900 Credited Hours." *Id.* § 1.17. The Plan further defines "Credited Hours" for an individual as follows:

(i) His Payment Hours, plus

(ii) the hours such person worked in Covered Employment and for which payment by his employer to the Health and Welfare Fund were due but which were not paid through no fault of such person, plus

(iii) 30 hours times the number of weeks taken to the nearest $\frac{1}{7}$th of a week during which such person was unable to work because of an injury or illness and received benefits under an applicable Workmen's Compensation Law, Occupational Disease Law, or similar legislation, or regular weekly income benefits under this Plan, up to a maximum of 780 hours; provided, however, that if a person's work in Covered Employment entitles him to 450 Payment Hours subsequent to receiv-

---

1. The parties have waived oral argument; therefore, the cross-motions for summary judgment are being decided on the basis of the pleadings, briefs, and affidavit submitted pursuant to Federal Rule of Civil Procedure 56(c).

ing credit for hours pursuant to this clause, the hours for which he received credit pursuant to this clause prior to such work shall be disregarded in computing his maximum.

*Id.* § 1.13.

Therefore, in order for plaintiff to be entitled to the death benefit, it is necessary that Roy Hickey had either 450 Credited Hours in the period from February 1, 1978 to July 31, 1978, or 900 Credited Hours between August 1, 1977 and July 31, 1978. Plaintiff and defendant agree that decedent was within the Eligible Class as required by § 1.18 of the Plan, but defendant contends that Hickey's Credited Hours for either of the relevant Work Periods was only 220 hours. Although plaintiff only claims that Hickey worked 220 hours during either of these periods, she argues that the additional hours required by § 1.17 are satisfied by § 1.13(iii), which is set forth above. That section permits an employee with insufficient Payment Hours, see Plan § 1.12, to meet the requirement of 450 or 900 Credited Hours by supplementing the Payment Hours with a credit for time during which he or she received benefits under Workmen's Compensation or similar legislation, "up to a maximum of 780 hours." *Id* § 1.13(iii).

▆ Plaintiff contends that the 780 hour credit is repeatedly available for a worker who is receiving Workmen's Compensation. Defendant, however, contends that this reservoir can be exhausted and that a covered active employee who utilizes this credit and does not thereafter earn sufficient Payment Hours will eventually become ineligible for benefits. Defendant's position is supported by the final clause in § 1.13(iii):

provided, however, that if a person's work in Covered Employment entitles him to 450 Payment Hours subsequent to receiving credit for hours pursuant to this clause, the hours for which he received credit prior to such work shall be disregarded in computing his maximum.

This language clearly establishes that if a worker earns 450 Payment Hours after receiving credit under § 1.13(iii), the credit he earlier received pursuant to that section will thereafter be disregarded in computing the maximum number of hours with which he or she may be credited. It follows, therefore, that if a worker does not earn 450 Payment Hours, his prior credit is not to be disregarded. If plaintiff's reading of § 1.13(iii) were correct, the "provided" clause of that section would be entirely superfluous. This would violate the rule of construction that all provisions of an instrument should be given effect if possible. *See Treasure Craft Jewelers, Inc. v. Jefferson Insurance Co.*, 431 F.Supp. 1160 (E.D. Pa.1977), *aff'd*, 583 F.2d 650 (1978). We find § 1.13 of the Plan to be clear and unambiguous: once a worker utilizes the 780 hour credit for times during which he or she is collecting Workmen's Compensation, the credit provided by subsection (iii) of that section may not be utilized to satisfy the Credited Hours requirement unless the worker has subsequently earned 450 Payment Hours.

Applied to the facts of this case, this construction means that Hickey was not an Active Covered Employee at the time of his death. Plaintiff alleges that Hickey was disabled by an injury he sustained on March 14, 1974. Complaint ¶ 5. Although he later returned to work, he was again disabled from March 24, 1976 until late May, 1978. *Id.* An affidavit submitted by the Co-Ordinator for the Fund, which has not been controverted, establishes that because of the Payment Hours he earned during the various times he returned to work after his initial injury, Hickey was able to avail himself of the 780 hour credit on several occasions. However, after receiving the most recent credit in 1976, Hickey did not earn the requisite Payment Hours to enable him to benefit again from the credit. Affidavit of Robert L. Meyers, Exhibit A to defendant's motion for summary judgment. Plaintiff has submitted no affidavit controverting the affidavit of the Co-Ordinator. Moreover, accepting as true the allegations of the complaint concerning the time that Hickey worked, it is clear that he did not work a sufficient number of hours to enable himself to requalify for the credit of § 1.13(iii).

462

Because we have construed the Plan in this case to limit the credit for time during which a worker is receiving Workmen's Compensation to a maximum of 780 hours unless the worker thereafter earns 450 Payment Hours, and because defendant has submitted affidavits establishing that Hickey utilized his available credit and did not thereafter earn 450 Payment Hours, plaintiff cannot defeat defendant's motion for summary judgment in the absence of opposing affidavits that create a genuine issue as to that material fact. "[W]hen an issue of fact is supported by affidavits or other evidence which admit of only one conclusion, the court may not draw an opposite conclusion merely on the basis of unsupported allegations." *Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240, 1244 (3d Cir. 1980). Defendant has therefore demonstrated the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law.