**HANNON MOTOR LINES, INC.,**
Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**
Civ. A. No. 61–47.

United States District Court
W. D. Pennsylvania.
Jan. 14, 1963.

James E. McLaughlin, McArdle, Harrington & McLaughlin, Pittsburgh, Pa., for plaintiff.

Stonecipher & Cunningham, Kenney, Hill, Stevens & Clark, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

### FINDINGS OF FACT

1. The plaintiff is Hannon Motor Lines, Inc., a corporation situated in Allegheny County and a citizen of Pennsylvania.

2. The defendant is Liberty Mutual Insurance Company, a Massachusetts corporation and citizen of Massachusetts.

3. The amount in controversy exceeds $10,000 exclusive of interest and costs.

4. The present action was instituted by the plaintiff to obtain a declaratory judgment setting aside a Workmen's Compensation policy, and the resulting claim for premium liability upon grounds of fraud, accident or mistake. The issue was whether the policy should legally be adjudicated to be a one-year policy or a three-year policy.

5. Defendant counterclaimed for an unpaid premium balance from the plaintiff aggregating $24,051.04.

6. On and before September 26, 1958, Mr. Hutchins, a salesman of Liberty Mutual, the defendant, contacted Mr. Hannon, president of the plaintiff, for the purpose of selling a Workmen's Compensation policy. This policy was to replace its then present coverage with Pennsylvania Manufacturers Association.

7. After several attempts, Mr. Hutchins finally succeeded on September 24, 1958 in convincing Mr. Hannon that the net cost of Liberty Mutual's Workmen's Compensation policy would be lower than that of P.M.A. and that Liberty Mutual could provide better policing of the policy.

8. Plaintiff's insurance coverage was originally represented by a binder which was replaced by a final policy (Exhibits A and A–1), prepared on December 18, 1958, and delivered to Mr. Hannon by Mr. Hutchins, defendant's representative.

9. The policy, itself, was delivered approximately a month after the binder had been provided.

10. During the term of the policy two subsequent changes were made. On April 1, 1959 a miscellaneous change of endorsement was made setting forth the period of the policy as being from November 26, 1958 to November 26, 1959. And on April 17, 1959, an amendatory endorsement was made setting forth the same policy terms.

11. On November 24, 1958, Mr. Hutchins, defendant's agent, dictated to Miss Scheirer, secretary and bookkeeper of Hannon Motor Lines, without the knowledge of Mr. Hannon and without any previous authorization thereto, a letter (Exhibit 1) authorizing a three-year retrospective basis policy. This letter was taken by Mr. Hutchins to the home of Mr. Hannon who signed it amidst some confusion at Mr. Hutchins' request. The policy included a section providing for a "retrospective premium endorsement—three-year—plan D", requiring an annual renewal for three years.

12. Plaintiff's letter of authority dated November 24, 1958, was signed by Mr. Hannon on plaintiff's stationery and specified: "Workmen's Compensation is to be on a three (3) year retrospective maximum of 117.5% and a minimum of 50% and a loss limitation of $10,000 per accident."

13. The insurance policy in question was issued for an initial one-year term, November 26, 1958 to November 26, 1959, but contained a four page endorsement entitled "Retrospective Premium Endorsement—Three Year—Plan D". Such policy and endorsement provided with respect to premiums:

(1) *Estimated Standard Premium.* An initial payment and thereafter monthly payments during the policy year based upon an estimated payroll of plaintiff.

(2) *Audited Standard Premium.* Arrived at after the close of a policy year by verifying the plaintiff's actual payroll for the period.

(3) *Retrospective Premium.* To be arrived at after six months from expiration of the policy year.

14. The plaintiff corporation had carried workmen's compensation for a substantial number of years prior to 1958 with other companies, and at no time did it ever have a policy which exceeded one year.

15. The plaintiff placed such insurance with defendant for policy service and for anticipated premium savings.

16. At no time during the discussions previous to the decision or during the negotiations to purchase the policy was

Mr. Hannon or anyone else on behalf of Hannon Motor Lines informed that the policy would be for a period exceeding one year.

17. The insurance policy's Three-Year Rider, Sec. 5, at (3), also contained the following provision with respect to cancellation by the insured prior to the end of the three-year period which is substantially identical with the mandatory provisions of the "Pennsylvania Manual of Rules, Classification and Rates" effective September 1, 1958:

"5. Cancellation.

"The cancellation or non-renewal, prior to the end of the three year period, of any policy designated in Table I shall be deemed to be cancellation of the retrospective rating plan, and the premium for insurance subject to Plan D for the period such policies have been in force shall be computed in accordance with the other provisions of this endorsement, provided:

"(a) Cancellation by the named insured. In the event of cancellation by the named insured, (1) the standard premium shall be computed as the sum of the audited standard premium for all completed annual periods and the short rate standard premium for the period in which cancellation is effective; the minimum retrospective premium shall be the standard premium so computed; (2) in computing the maximum retrospective premium, the standard premium shall be computed as the sum of the audited standard premium to the date of cancellation and the estimated standard premium from the date of cancellation to the end of three year period."

18. The plaintiff paid to the defendant during the period from November 26, 1958 to October 26, 1959—$9524.96 in premiums, which were invoiced to the plaintiff on a monthly basis.

19. The typed portions of the complete policy sets out in a number of places: "Policy Period: From November 26, 1958 to November 26, 1959 12:01 A.M. standard time at the address of the insured as stated herein." It is further added to by typed columns headed "Total Estimated Annual Remuneration" and "Estimated Annual Premiums".

20. On November 10, 1959, the plaintiff wrote to Liberty Mutual notifying it that the plaintiff would not renew the policy. This was done under the understanding that the plaintiff had a one-year contract. This decision to cancel was made as a result of finding that the cost of the policy was higher than had been anticipated because Liberty Mutual failed to police its policy as promised.

21. The defendant knew that the plaintiff planned to replace its compensation business with another company, effective November 26, 1959, and never explained to plaintiff that it would be required to pay an amount exceeding two years premiums to the defendant without the benefit of any coverage.

22. Defendant failed to make any effort, prior to the end of the first year, to settle its claim by entering into a further two-year contract or in any other way to mitigate the assessment against the plaintiff.

23. On January 4, 1960, the defendant submitted an audit premium invoice covering the period from November 26, 1958 to November 26, 1959. The invoice showed the total premiums, the deduction for the advance premium, and the net premium adjustment. The result of that invoice was a balance due to the plaintiff of $562.04 as a refund on the premiums which it had advanced.

24. Defendant first informed the plaintiff on August 17, 1960, nine months after the plaintiff had placed the business with another insurance company that it was demanding from the plaintiff the amount of $19,014.64, the represented amount due under the penalty provision of the policy.

25. Thereafter, on October 24, 1960, the defendant informed the plaintiff that its claim had been revised to $24,051.04, because the Board of Directors had withdrawn the dividend credit for failure of

payment, and accordingly made a demand for that amount upon the plaintiff.

26. A summarization of certain facts, chronologically, is as follows:

    a. September 24, 1958—Hutchins, defendant's agent, convinces Hannon, plaintiff's president, that net cost of defendant's insurance will be lower, and defendant will "provide better policing of policy in Workmen's Compensation.

    b. September 26, 1958—One year binder delivered.

    c. December 18, 1958—Prepared policy delivered.

    d. November 24, 1958—Plaintiff's letter of authority (Exhibit 1) dictated by Hutchins and signed by plaintiff's president.

    e. April 1, 1959—Endorsement on policy indicating term as being from November 26, 1958 to November 26, 1959.

    f. April 17, 1959—Amendatory endorsement on policy indicating term as being from November 26, 1958 to November 26, 1959.

    g. November 10, 1959—Letter of plaintiff informing defendant that policy will not be renewed at end of term.

    h. January 4, 1960—Defendant submitted audit premium invoice covering period November 26, 1958 to November 26, 1959, and made a refund of $562.04 to plaintiff on premium advanced by plaintiff.

    i. August 17, 1960—Notification by defendant of liability by plaintiff for two years additional coverage premium to November 26, 1960, for failure to renew for two additional years.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties.

2. The particular policy delivered by defendant to plaintiff was an unusual policy as understood by the common man, in that its language did not plainly and succinctly set it out as a three-year contract, but rather purported it to be a one-year contract in that most noticeable typewritten portion, and in its more remote printed part provided for annual renewals and cancellation penalties for failure to renew annually; and so it presented conflicting typewritten provisions with the printed provisions as an ambiguity as to its duration.

3. The printed cancellation provision of the retrospective rating premium plan and the typed term of its existence presented an ambiguity which must be strictly construed against the insurer.

4. The typewritten portions pertaining to the termination date control the printed portions.

5. The policy was a one-year policy on its face and because of its ambiguity must be construed in favor of the insured.

6. The plaintiff was at the beginning and during the pendency of the term of the policy for one year under the impression that it had a one-year workmen's compensation policy with the defendant which would expire on November 26, 1959.

7. The policy was a one-year policy which expired on November 26, 1959, and no liability for premiums or penalty may attach against the plaintiff for more than the one year.

8. The plaintiff did not know that the defendant could or would lay claim against the plaintiff for any liability by virtue of the policy agreement binding it beyond November 26, 1959, until the defendant so informed it in August 1960.

9. In the dealings of the parties there was inequitable conduct on the part of the insurer which nurtured the mistaken belief on the part of the insured that the insured was entering into a one-year workmen's compensation policy.

10. The defendant is estopped from claiming premiums or penalties for failure to renew, for the reason that the

premiums had been paid for their legal term and because, also, it remained passive when the plaintiff informed the defendant that it was about to place its coverage with another carrier after November 26, 1959.

11. The plaintiff is entitled to remedial judgment, declaring the particular policy of insurance No. WC 7081–102338–38 as being a one-year contract which became effective November 26, 1958 and expired November 26, 1959 at 12:01 A.M. standard time.

12. The plaintiff is entitled to a remedial judgment declaring that the defendant had no right to demand, and the plaintiff had no obligation to pay, any premiums or other consideration or penalties in connection with policy No. WC 7081–102338–38 beyond its expiration time of November 29, 1959 at 12:01 A.M. standard time.

OPINION

The questions in this case turn on more than the contents of a policy of insurance. This decision encompasses three phases as material components of the whole case. These are (1) the question of ambiguity of the policy's term, (2) the question of method of inclusion of two-year renewal requirements, and (3) the question of whether there was a meaningful passiveness on the part of the defendant at the time when it was notified by the plaintiff that the policy would not be renewed at the expiration date set out in the policy as November 26, 1959. In summary it presented the question of whether there was a mutual understanding by the parties before and during the period between November 26, 1958 and November 26, 1959.

Undoubtedly, the plaintiff and its responsible agents did not read the policy except for a superficial check of the first inside pages. That it was not read cannot ordinarily relieve the insured from being bound thereby. Hayes v. Travelers Insurance Co., 93 F.2d 568, 125 A.L.R. 1053 (10th Cir.)

But when a party is mislead by its ambiguity, as supported by other factors, the ambiguity must be viewed in the light favorable to that party's belief in its meaning and purport. Metropolitan Casualty Ins. Co. of New York v. Banks, 76 F.2d 68 (3rd Cir.); Gulf Refining Co. v. Home Indemnity Co. of New York, 78 F.2d 842 (8th Cir). It is common knowledge that the average man finds it difficult to unwind the meaning in an insurance policy without the help of his insurance agent or other professional aid. Here the plaintiff had previously employed only one-year term workmen's compensation coverage. It would logically, under ordinary circumstances, believe that it was continuing to employ the same coverage from the defendant. This would be so, particularly, in view of the fact that this new coverage was procured to improve its conditions of (1) lower costs and (2) better policy policing. It had had compensation problems with its employees up to then which had bothered the plaintiff. It is again common knowledge that workmen's compensation policies are rarely accepted for more than one year where auditing is required for rate adjustment.

Turning then to the policy itself, the first typed pages state, "Item 2. *Policy Period: From November 26, 1958 to November 26, 1959, 12:01 A.M., standard time* at the address of the insured as stated herein." It also indicates: "Total Estimated *Annual* Premium $10,585.00." (Emphasis supplied.)

The next typed "Page No. 1" speaks of "Total Estimated *Annual* Remuneration" and "Estimated *Annual* Premiums". The third page entitled "Amendatory Endorsement" sets this out: "Effective Date November 26, 1958, *Expiration Date November 26, 1959*". The same words are set out in the next page entitled: "Miscellaneous Charge Endorsement", plus the repetition of "Estimated Total *Annual* Remuneration" and "Estimated *Annual* Premium". (Emphasis supplied.)

The phraseology which the defendant relies upon to put the plaintiff on notice that the policy is for a three-year period is primarily that contained in print on

a group of pages numbered 2211 captioned "Retrospective Premium Endorsement—*Three Year*—Plan D". To the ordinary unwary person this has no more significance than the other conditional clauses contained in the printed part of the form such as, for instance, on page 2 of the outside cover of the component parts of the policy: "2 Long Term Policy. If this policy is written for a period longer than one year \* \* \*." Such conditional phraseology scattered in the general maze of hard-to-understand language, *even if read by the plaintiff's agents* would have no impact on them to the effect that the plaintiff was entering into a three-year policy contract, *if it was not called to their attention* as against the expiration date so vividly staring at them when the policy cover is opened that "November 26, 1959 12:01 A.M. standard time" is the ending time of the policy.

■■ The language in an insurance contract is construed by its usual and ordinary meaning so that a person of ordinary intelligence can understand what is being insured and for how long. Underwriters at Lloyd's of London v. Cordova Airlines, Inc., 283 F.2d 659 (9th Cir., 1960). And when an insurance policy is prepared by the insurer, it must be construed against the insurer. Matthews v. Allstate Insurance Co., 194 F. Supp. 459 (D.C.1961).

■ However, it was not called to the attention of the plaintiff's agents; rather it was effectually obscured by the defendant's agent. Insurance representatives have a trust relation imposed upon them by the very nature of the service which they render. It is necessary that they cultivate the friendship and trust of their clients, and this requires that they divulge every aspect of their mutual contracts frankly and noticeably. Their clients expect and believe that they will be informative on such matters which are less understood by them.

The defendant's agent had entree to the plaintiff's place of business to such an extent that he could dictate a letter to the plaintiff's secretary-bookkeeper without the knowledge of her supervisors, and to the home of the plaintiff's president on a number of occasions, and particularly on one occasion when other visitors were in his home and during the time of his wife's illness. It was on this occasion that defendant's agent obtained the signature of the president to the letter which he had had typed on the defendant's stationery by the secretary-bookkeeper.

Conflicting testimony was submitted by the parties, but this Court had the opportunity to observe the witnesses as they testified and to examine their demeanor while on the stand and the substance of their testimony in the light of all the other evidence as presented, and further to weigh the credibility of the witnesses. It is the firm opinion of this Court that the credibility of the plaintiff's witnesses is entitled to the greater weight; and this Court finds that the plaintiff's evidence in the light of all the other evidence in the case is clear, concise and indubitable and easily establishes the plaintiff's case.

In addition to the ambiguity as contained in the policy and the method used to extend the policy to a purported three-year term, the passiveness of the defendant at the time when it received notice of no renewal by the plaintiff on October 27, 1959 as the third phase of the case, presents corroborating proof that its dealings with the plaintiff were not open and frank, but again obscured the purported liability of the plaintiff and permitted it to assume another liability with a different company for additional workmen's compensation protection. If the defendant had been motivated by, and acted equitably and faithfully, it would have lost no time to remind the plaintiff of its obligation to renew for two more years and to attempt to prevent additional, *unnecessary* expenditure by the plaintiff. Instead it did nothing and said nothing for eight months when it merely made a demand for the additional amount as compensation less the dividend amount because of the plaintiff's failure to pay. By

its complete failure to act when notified of policy discontinuance, it, in effect, avoided two years of insurance risk for workmen's compensation covering the plaintiff's employees and is now demanding the premium for that unassumed risk.

■■ Every party seeking damages in a court of law is, in duty, bound to diminish or eliminate all damages possible. Here the defendant could and should have brought to the plaintiff's attention that it may as well have continued its workmen's compensation for two more years with the defendant, because it would be paying for the protection anyhow. In failing to do this, the defendant has failed in an equitable duty and it would be estopped from collecting any such premiums, if there had been any obligation on the part of the plaintiff to pay for two additional years. Commodity Credit Corp. v. Rosenberg Bros. & Co., 243 F.2d 504 (9th Cir.), certiorari denied 355 U.S. 837, 78 S.Ct. 62, 2 L.Ed.2d 48; United States v. Brookridge Farm, 111 F.2d 461 (10th Cir.).

The method by which the printed obligations in the main portion of the policy offset the typed portion in the foremost part of the policy is noted for its indication of an added obligation on the plaintiff to renew the policy at the end of the first year and at the end of the second year and for failure to do so, to stand bound for premium payment nevertheless, when a simple statement on the typed portion in front should have the expiration date as November 26, 1961 (not November 26, 1959).

■ It is within the power of the courts to interpret and read insurance contracts so as to reflect the agreements fairly and legally entered into by the insurance company with policy holders, where through mutual mistake or mistake on the part of one and the inequitable conduct on the part of the other, the agreement actually entered into does not express the real contract between them. Kansas City Life Insurance Co. v. Cox, 104 F.2d 321 (6th Cir.1939).

I am impelled to conclude, therefore, that the ambiguity existing within the terms of the policy, together with the conduct of the defendant, justifies the conclusion that the policy terminated on November 26, 1959, and that said policy was a one-year policy so that defendant's claim for premium liability for an additional period of two years is unsupportable under the facts and the law.