**ATCHISON & KELLER, INC., a corporation, Atchison and Keller Company, a corporation, and Harry H. Conrad Co., Incorporated, a corporation, Appellants,**

v.

**H. G. SMITHY COMPANY, a corporation, Appellee.**

No. 4107.

District of Columbia Court of Appeals.

Argued Jan. 8, 1968.

Decided June 25, 1968.

Mark P. Friedlander, Jr., Washington, D. C., with whom Mark P. Friedlander, Blaine P. Friedlander, Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief, for appellants.

Charles J. Steele, Washington, D. C., with whom John J. Carmody, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge.

This appeal is from a judgment of the trial court for H. G. Smithy Company, appellee, on appellants' suit in negligence for breach of an alleged duty to disclose that cancellation of a retrospective premium endorsement insurance plan would subject appellants to substantial penalties. We affirm.

From some time prior to World War II appellants, who are engaged in the plumbing and heating business, had placed all of their insurance through Shannon & Luchs Co. In 1960, because of the considerable plumbing work supplied them by H. G. Smithy Co., appellants transferred their insurance business to that firm. Included were a one-year workmen's compensation policy, a one-year automobile liability policy, and a three-year general liability policy. These three policies were covered jointly by a three-year retrospective premium endorsement plan under which appellants paid annual premiums based upon actual losses rather than fixed standard premiums. In principle the retrospective plan

resulted in a savings in premium if the insured's experience was good, with few losses, but in a premium in excess of standard if the insured's experience was bad, with high losses. Because of this latter possibility, the plan was reinsured by a Lloyd's of London three-year retrospective penalty premium policy.[1]

Under the retrospective plan a standard premium is deposited by the insured, but the final premium could be more or less than the standard, within certain minimum and maximum limits, after an annual retrospective adjustment based upon actual losses. The ultimate premium due under the plan is not determined until some months after each yearly term because of the rate adjustments which have to be made once the extent of the yearly loss becomes known. Failure to renew the one-year policies each year, or cancellation of any one of the policies, effects the cancellation of the retrospective plan, with resulting penalties to the insured.

Upon transfer of the insurance to Smithy the retrospecive premium endorsement plan, together with the policies covered and the Lloyd's reinsurance policy, continued in effect as before, with renewals in 1960 and 1963. Prior to March 1, 1964, the anniversary date of the workmen's compensation and automobile liability policies, Smithy delivered to appellants a written binder to effect their renewal. Unknown to Smithy, however, appellants had determined not to renew this insurance through their agency but to place it with the F. W. Berens Company who, at appellants' request, had placed a similar binder effective March 1. By letter of March 6, 1964, Mr. Melvin Keller, Secretary of Atchison & Keller, Inc., informed Smithy that because of economic necessity "we will not be re-

newing any of our insurance policies which come under the Retrospective Premium Plan." Smithy's reply of March 11 advised that per instructions they were not renewing the policies, listing the four, and requested the return of the general liability and the Lloyd's reinsurance policies for cancellation. Smithy did not tell appellants that the failure to renew and the cancellation could result in the payment of an additional premium.

Appellants had deposited a retrospective standard premium in the sum of $15,310.15. When the final retrospective adjustment was made, appellants had to pay a further premium of $18,631.85.[2] Also, because the Lloyd's premium penalty policy did not permit a short rate cancellation, use of the pro-rata cancellation method to compute Lloyd's liability resulted in a payment to appellants of only $7,960.68 of this amount. Appellants' alleged loss then stood at $10,-671.17. However, A. L. Jagoe, whose agency was appellants' insurance agent and broker at the time of trial, testified that if the retrospective plan had not been cancelled, appellants' liability for the year March 1, 1963 to March 1, 1964 would only have been $764.30 over and above the recovery from Lloyd's. This suit is for $9,906.87,[3] the difference between the two figures.

Smithy denied a breach of a duty to disclose, claiming not only that the retrospective plan was automatically cancelled when the Berens binder was placed, but that its agency relationship with appellants was terminated as well.

Hannon Motor Lines, Inc. v. Liberty Mutual Insurance Co., 214 F.Supp. 250 (W.D. Pa.1963), is the only case cited to us wherein a court has held there is a duty to inform the insured of the dangers in-

1. The Lloyd's policy was taken out at the recommendation of Shannon & Luchs Co. somewhat later than the retrospective premium endorsement plan because of a bad loss experience in one year.

2. Because of the cancellation and of a large workmen's compensation loss, the earned premium was the actual adjusted loss for the year.

3. Erroneously stated in the complaint as $9,916.87.

herent in failing to renew under a three-year retrospective plan. In *Hannon* the insured brought an action for declaratory judgment to set aside a workmen's compensation policy and the insurer counterclaimed for an unpaid premium balance. The policy in question had been carried for years as a one-year policy when, at the behest of the insurer and under somewhat unusual circumstances, the insured authorized a three-year retrospective premium endorsement requiring an annual renewal of the policy for three years. Before the expiration of the first year under the plan, while still of the understanding that the policy was a one-year contract, the insured wrote that it would not renew the policy. The insurer did not explain that failure to renew would result in a substantially higher premium being due. The court first found an ambiguity in the contract in that it purported to be a one-year policy in its most noticeable typewritten portion while the requirements for annual renewal and for cancellation penalties in the event of failure to renew were spelled out in the more remote printed part. It also found inequitable conduct on the part of the insurer in the manner in which the retrospective endorsement was obtained and in the fact that the insurer remained passive when it knew, before the renewal date, that the insured had determined not to renew.

This case differs from *Hannon* in a number of significant details. Gilbert Keller, President of Atchison & Keller, Inc., testified that although he had never read the policies, the plan was explained to him by Shannon & Luchs when it was initially adopted. The extent to which Melvin Keller read the policies or ever discussed them with Smithy is not clear. And while we are aware that the mere fact that an insured fails to read his contract of insurance does not necessarily bar recovery, Hampton Roads Carriers v. Boston Insurance Co., 150 F.Supp. 338, 343 (D.Md.1957); Schustrin v. Globe Indemnity Co., 44 N.J.Super. 462, 466, 130 A.2d 897, 899 (1957), other relevant factors are present here. The retrospective plan had been in effect for approximately thirty years, so that appellants could have been under no misapprehension as to when the premium for each policy was due. There was testimony that the retrospective type insurance plan is not rare or unusual, and the policy terms do not appear to present any ambiguity. Furthermore, Melvin Keller met with Berens several times over a period of some months to discuss switching appellants' insurance business to that agency and, indeed, gave the policies to Berens for study prior to the transfer. Berens who knew of the proposed transfer of insurance is not alleged to have warned appellants of the possible penalties, and yet Smithy who knew nothing of the contemplated change is claimed to have had a duty to have given such a warning. The letter to Smithy that all policies under the plan were not to be renewed was sent *after* the expiration date of the workmen's compensation and automobile liability policies, at a time when a binder had been placed by Berens, effective on their renewal date. It was only then that Smithy became aware that they had lost the business to another insurer and Smithy simply followed the instructions of its principal, as it was required to do, by not renewing the one-year policies and cancelling the three-year policies. In the final analysis the issue of failure to disclose presented a question of fact for the trial court,[4] and in our opinion there was sufficient evidence to support a finding by the court that Smithy had no duty to inform appellants of the possible financial loss to them.

While the court did not specify the basis of its finding for appellee, it could also have found a lack of proximate causation in any failure to inform. Appellants' claim is not that they would not have

4. Foster v. United States Aviation Underwriters, Inc., D.C.App., 241 A.2d 914 (1968).

changed insurance agents if they had been so informed, but that they would have had an opportunity to reconsider their action, cancel the binder with Berens, and renew with Smithy. They admit they might not have done so, but say that at least their decision would have been made with full knowledge of the possible financial loss. Of course the actual loss could not have been known at the time, nor is it possible even now to make a precise determination of the amount that would have been paid if the plan had continued in effect until its normal termination date. Nevertheless, there was evidence that appellants would not have renewed the policies even if a warning of the risks involved in not doing so had been given because of appellants' admitted intention to obtain additional plumbing business by changing to a new insurer.[5] Again, it is for the trial court to weigh the evidence, including the testimony of experts, and to judge the credibility of witnesses, and as the decision here has sufficient factual support in the record, it will not be disturbed on appeal.

Affirmed.

---

5. The implication is clear that in choosing insurance agents appellants relied less on their expertise than on the amount of plumbing business they could offer.