Bradley, Appellant, *v.* Fidelity & Casualty Co. of New York.

Argued April 30, 1940.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Donald W. Ebbert,* with him *John E. Laughlin, Jr.,* and *Thorp, Bostwick, Reed & Armstrong,* for appellant.

*Paul E. Hutchinson,* with him *John C. Sherriff,* of *Sherriff, Lindsay, Weis & Hutchinson,* for appellee.

OPINION BY CUNNINGHAM, J., July 19, 1940:

Plaintiff brought this action of assumpsit to recover $2671.04, plus interest, as the amount allegedly due him under the terms of a fidelity bond issued by the defendant company. The amount sued for represents the total defalcations of an employee, Joseph L. Rigby, over a period of three years. Defendant's affidavit of defense put the entire claim in issue, and at the trial it submitted a point for charge to the effect that its maximum liability under the bond could, in no event, exceed $1000, with interest. The trial judge reserved the question of law thus raised, and submitted the case to the jury, which rendered a verdict in favor of the plaintiff for the full amount of the claim.

Subsequently the court in banc ordered the point of law reserved to be marked affirmed and set aside the verdict to the extent that it exceeded $1000, plus interest. Judgment was entered accordingly, and we now have this appeal by the plaintiff.

As the controversy comes before us in the form of a

"Statement of the Case," filed under our Rule 56, we shall confine ourselves to the matters therein contained.

Rather extensive quotations from the bond are essential to an understanding of the issue. Omitting those sections which are not here relevant, the bond provides: "Schedule Standard Fidelity Bond No. 1470797.

\* \* \* \* \*

"The Fidelity and Casualty Company of New York, hereinafter called the Surety, does hereby agree to indemnify Paul R. Bradley, d. b. a., Automatic Canteen Company, of Pittsburgh, Pennsylvania, hereinafter called the Employer, against the loss of any money ...... through the ...... dishonesty of any Employee named in the schedule forming part of this bond...... while such Employee holds any position at any place in the service of the Employer while this bond is in force.

"The foregoing agreement is subject to the following conditions:

"1. The term of this bond begins on the 13th day of October, 1932, and continues in force until terminated or canceled as hereinafter provided.

"2. Without prejudice to the rights of the Employer as respects anything that may occur during the period that the bond is in force, the Surety may cancel this bond at any time by a written notice stating when the cancellation takes effect ...... The Employer may cancel this bond by like notice to the Surety. ......

"3. The liability of the Surety on account of any one Employee shall not exceed the amount set opposite the said Employee's name in the said schedule ......

\* \* \*

"10. If this bond is issued as a continuation of a bond previously issued by the Company to the Employer, the Company shall be liable under this bond for any loss discovered after the termination of such former bond which may have occurred at a date at which the Employer may have been covered in respect of

such loss by the former bond; but the Company's liability (1) for any loss occurring within the term of the old bond shall be subject to the limit and conditions of the Company's liability specified under the said old bond; (2) for any loss occurring within the term of this bond shall not exceed the limit of the Company's liability specified in this bond. Subject to the foregoing limits as respects each bond, the Company's aggregate liability under both bonds for all loss or losses shall in no event exceed the greatest amount for which the Company could be liable for such loss or losses under one of the said bonds."

Attached to this bond was the following schedule:

"The Fidelity and Casualty Company of New York.

Bonding Department
Schedule of Employees.

Forming part of
Schedule Bond No. 1470797      Dated October 13, 1932.

\* \* \* \* \*

| Name...... | Amount of Security | Premium. |
| --- | --- | --- |
| Rigby, Joseph L. | $1000.00 | $10.00 |
| Cole, Carroll C. | 1000.00 | 10.00 |
| White, Howard C. | 1000.00 | 10.00 |
| Total | $3000.00 | $30.00" |

On June 22, 1933, one of the employees, Cole, resigned and a premium credit of $3.10 was granted by the defendant.

On October 13, 1933, the defendant issued to the plaintiff the following schedule:

"The Fidelity and Casualty Company of New York.

\* \* \* \* \*

Schedule Bond No. 1470797      Date: October 13, 1933.

\* \* \* \* \*

The Schedule of Employees forming part of the bond described above is hereby amended in accordance with instructions received from the Employer to read as set forth in the Schedule of Employees subjoined.

\* \* \* \* \*

Schedule of Employees

| Name...... | Amount of Security | Premium. |
|------------|-------------------|----------|
| Rigby, Joseph L. | 1000.00 | 10.00 |
| White, Howard C. | 1000.00 | 10.00 |
| Total | $2000.00 | $20.00" |

On March 8, 1934, the coverage of the bond was extended to another employee, Ralph F. White.

On October 13, 1934, the defendant again issued a schedule, which provided:

"The Fidelity and Casualty Company of New York.

Schedule Bond No. 1470797    Date: October 13, 1934.

\* \* \* \* \*

The Schedule of Employees forming part of the bond described above is hereby amended in accordance with instructions received from the Employer to read as set forth in the Schedule of Employees subjoined.

\* \* \* \*

Schedule of Employees

| Name...... | Amount of Security | Premium. |
|------------|-------------------|----------|
| Rigby, Joseph L. | 1000.00 | 10.00 |
| White, Howard C. | 1000.00 | 10.00 |
| White, Ralph F. | 1000.00 | 10.00 |
| Total | $3000.00 | $30.00" |

While neither the bond nor the schedules provide for any termination date, it is apparent from the premiums

charged, as set forth above, that the intention of the parties was that the premium of 1% was to pay for one year's protection. The evident purpose of the subsequent schedules issued on October 13 of each year was to keep the plaintiff employer's protection in force for the ensuing year as to the employees named in the respective schedules.

On February 23, 1935, while the bond was in effect, it was discovered that Joseph L. Rigby, an employee named in each of the three schedules, was a defaulter. Subsequent investigation revealed that during the first year the bond was in force the losses attributable to him totaled $906.95; during the second year they exceeded $1000; and during the third year amounted to $764.09, or a total of $2671.04.

Plaintiff's claim is based upon the theory that the yearly premiums paid for a protection of $1000 per year, i. e., that defendant's liability on the bond is cumulative. As against this, defendant contends that the effect of paragraphs 3 and 10 of the bond is to limit its liability for the defalcation of Rigby to the amount set opposite his name in the various schedules, viz., $1000.

In considering whether or not the bond imposed cumulative liability, we do not have the benefit of any Pennsylvania decisions, and it is impossible to reconcile all the cases from other jurisdictions.

Many cases involving bonds containing somewhat similar provisions have been considered in outside jurisdictions. In their disposition the test generally applied is whether or not the provisions of the bond are such that liability automatically terminates on a specified date. If so, any renewal amounts to a new contract with the result that the insurer's liability is correspondingly increased.[1]

---

[1] *Maryland Casualty Company v. First National Bank*, 246 F. 892, (C. C. A., 5th Cir.); *Leonard v. Aetna Casualty and Surety*

It is to be noted that the bond with which we are concerned does not automatically expire, and may be canceled only by the written notice specified in Paragraph 2. Such being the case, it may be remarked that a majority of the cases in other jurisdictions support the general proposition that the insurer's liability is non-cumulative.

Manifestly, each case must be disposed of upon its own facts and under the provisions of the bond under which the claim arose. Therefore, even if it be assumed that the technical effect of the schedules was to create successive bonds, we do not see how, in view of the express provisions of Paragraph 10, the defendant's liability could be cumulative.

Treating, as we must under its language, the issuing of each subsequent schedule "as a continuation of a bond previously issued," that paragraph contemplates a

---

*Company,* 80 F. (2) 205 (C. C. A., 4th Cir.); *Brulatour v. Aetna Casualty and Surety Company,* 80 F. (2) 834 (C. C. A., 2d Cir.); *Standard Accident Insurance Company v. Collingdale State Bank,* 85 F. (2) 375 (C. C. A., 3d Cir.); *Aetna Casualty and Surety Company v. First National Bank,* 103 F. (2) 977 (C. C. A., 3d Cir.); *Mayor of Brunswick v. Harvey,* 114 Ga. 733, 40 S. E. 754; *De Jernette v. Fidelity and Casualty Company,* 98 Ky. 558, 33 S. W. 828; *United States Fidelity and Guarantee Company, v. Williams,* 96 Miss. 10, 49 S. 742; *Krey Packing Company v. Employers' Liability Assurance Corp.,* 127 S. W. (2) 780 (Mo. App., 1939); *National Bank of North Hudson v. National Surety Company,* 105 N. J. L. 330, 144 A. 576; *Fourth and First Bank and Trust Company v. Fidelity and Deposit Company of Maryland,* 153 Tenn. 176, 281 S. W. 785; *Park Falls State Bank v. Fidelity and Deposit Company,* 206 Wis. 413, 240 N. W. 154. For cases holding that such bonds are continuing obligations even though originally for a definite term, see *Pearson v. United States Fidelity and Guarantee Company,* 138 Minn. 240, 164 N. W. 919; *Rankin v. United States Fidelity and Guarantee Company,* 86 Ohio State 267, 99 N. E. 314; *First National Bank v. United States Fidelity and Guarantee Company,* 110 Tenn. 10, 75 S. W. 1076.

possible liability to the insured, within the specified limitations, for defalcations by any employee named in the applicable schedule occurring in any one, or two, or all three, of the years here involved.

But, upon the question at issue, the paragraph expressly provides: "Subject to the foregoing limits as respects each bond, the Company's aggregate liability under both bonds for all loss or losses shall in no event exceed the greatest amount for which the Company could be liable for such loss or losses under one of the said bonds." In this case that "greatest amount" is $1000. The plain meaning of the words must control, and the fact that the defendant is a paid surety will not warrant a construction which would disregard the clearly expressed intention of the parties: *New Holland Dairies, Inc. v. Regent Dairy Products Corp. et al.*, 115 Pa. Superior Ct. 87, 174 A. 664. Cf. the recent case of *Exchange Building Association of Fairhill v. Indemnity Insurance Company of North America*, 338 Pa. 562, 12 A. 2d 924.

Plaintiff, realizing this difficulty, advances an argument to the effect that there is only one bond but that the renewal schedules, together with the bond, constitute a contract whereby the plaintiff purchased $1000 worth of insurance per year. But, if it be conceded that there is only one bond, the plaintiff's argument cannot be adopted because it overlooks the provision of Paragraph 3, that "The liability of the Surety on account of any one employee shall not exceed the amount set opposite [his] name in the said schedule."

While all ambiguities are to be resolved in favor of the insured, *(MacDonald v. Metropolitan Life Insurance Co.*, 304 Pa. 213, 155 A. 491), nevertheless the ambiguity must appear in the bond. It cannot be read into it by a strained interpretation in order to permit recovery:

*Urian v. Scranton Life Ins. Co.*, 310 Pa. 144, 165 A. 21;
*Lyford v. New England Mutual Life Ins. Co.*, 122 Pa.
Superior Ct. 16, 184 A. 469.

Judgment affirmed.