## Snader v. London and Lancashire Indemnity Company of America

*Bernard M. Zimmerman* and *Harold E. Martin,* for plaintiff.

*Paul A. Mueller,* for defendant.

WISSLER, J., October 31, 1947.—Plaintiff filed a complaint in assumpsit to recover $3,558.76, plus in-

terest, as the amount allegedly due him under the terms of the liability insurance policy issued by defendant company. The amount sued for represents a settlement effected by plaintiff in a suit brought against him by John W. Lookabaugh and Louise Lookabaugh, husband and wife, for personal injuries sustained by Louise Lookabaugh while on the premises of plaintiff in this suit. The complaint filed incorporated the record and pleadings in the personal injuries suit by reference, and in the statement of claim, among other things, it is alleged that on June 17, 1945, Samuel C. Snader was managing and operating a swimming pool and bathhouse, in connection with a golf course, on a piece of land situated in Manheim Township, Lancaster County, Pa., on which is located a golf course known as Overlook Golf Course, and that on this day, at about 2:30 p.m., Louise Lookabaugh, having paid the required admission fee, went to the swimming pool and bathhouse in which she removed her street clothes and put on a bathing suit. She, however, did not make use of the swimming pool, and later in the afternoon re-entered the bathhouse and was on her way to the locker when the floor of the bathhouse collapsed.

In paragraph 3 of the complaint it is alleged that on March 1, 1944, plaintiff was the lessee in possession and the operator of premises known as the Overlook Golf Course, consisting of a golf course, clubhouse and locker rooms, bowling alleys, bathhouses, swimming pool, and other improvements, the use of which was open to members and the public who were charged and paid fees for such use. It is further alleged that on March 1, 1944, defendant company issued to plaintiff its policy of liability insurance covering plaintiff's operations, a copy of which policy is attached to the complaint, marked Exhibit "A", and made a part thereof, and that this policy of insurance was in full force and effect on June 17, 1945. The complaint further alleges in paragraph 6, as follows: "Thereafter

plaintiff was notified of a claim against him for personal injuries alleged to have been sustained by one Louise Lookabaugh, a patron of his premises, in the collapse of the floor of a bathhouse and storage shed situated thereon, on June 17, 1945, and plaintiff immediately notified defendant insurance carrier of said claim." To this complaint defendant filed preliminary objections asking that the action be dismissed and judgment entered for defendant, because the insurance policy shows on its face that the policy covered only a "golf course" and that it is apparent from the complaint that the accident happened in the bathhouse used in connection with the swimming pool.

It is necessary to an understanding of the issue to quote from the bond, the declarations of the insured, and the endorsement thereto. Omitting those sections which are not here relevant, the bond provides:

"LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA

. . . . .

"Does hereby agree with the Insured named in the Declarations made a part hereof in consideration of the payment of the premiums and of the statements contained in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"I. Coverage A—Bodily Injury Liability

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of such of the hazards hereinafter defined as are indicated by specific pre-

mium charge or charges in Item 4 of the Declarations.

* * * * *

"13—DEFINITION OF TERMS. The unqualified word 'premises' wherever used in this policy shall mean the premises designated in the Declarations including buildings and structures thereon and that portion of the ways immediately adjoining.

* * * * *

"DECLARATIONS

"Item 1. Name of Insured: Samuel C. Snader.

"Address: Overlook Golf Course, R. D. No. 3, Lititz Pike, Lancaster, Pennsylvania.

"Business of Insured on premises: Golf Course Operator.

"Interest of named Insured in premises: Lessee.

* * * * *

"Item 3.

1. PREMISES

"Location

"Overlook Golf Course, R. D. No. 3, Lititz Pike, Lancaster, Pennsylvania.

"Purposes of Use: Golf Course, Code 377, Receipts.

"Part Occupied by Insured: Entire.

"Portion of Premises Insured: Entire.

* * * * *

"Endorsement attached to and forming part of Policy . . . issued to Samuel C. Snader, . . . it is understood and agreed that the cover as provided under this policy does not apply as respects:

"(1) Swimming Pools or Bathing Beaches—
        (Not Commercial).

"(2) Swimming Pools or Bathing Beaches—
        (Commercial)"

The gravamen of defendant's contention is that any liability under the bond is limited to plaintiff's golf course and operations thereon, because the insured in his declarations attached to and made part of the bond described it as a golf course. It is true the declarations

of the insured describe the location and purpose of use as a "golf course", but likewise the declarations describe the part occupied by the insured as the "entire" portion. It would seem that the use of the word "entire" in connection with the definition of hazards designated as "Divisions 1. Premises—Operations. The ownership, maintenance or use, for the purposes stated in the Declarations, of the premises and all operations during the policy period which are necessary or incidental to such purposes", and section 13 of the policy in which it is stated that the unqualified word "premises" wherever used shall mean the premises designated in the declarations, including buildings and structures thereon, makes the use of the word "golf course" merely descriptive, and includes any buildings thereon and related activities, except that which was expressly excluded. This intent is further evidenced by the endorsement to the policy with respect to the computation of premiums, basing them at the rate of $0.50 per $100 of receipts, and specifically defining the term receipts as follows: "The term 'receipts' as used herein shall mean the entire gross income (including taxes) received by the Insured from all undertakings operated by the Insured or by others during the policy period at the location specified in Item 3 of the Declarations."

A principle frequently applied as an aid in arriving at the intention is that "the mention of one thing implies the exclusion of another thing: expressio unius est exclusio alterius": Fazio v. Pittsburgh Railways Co., 321 Pa. 7 (1936). Applying this principle, the exclusion from liability of "swimming pool or bathing beach" confines the excluded liability of the insured to injuries sustained in the swimming pool and bathing beach, and does not enlarge its exclusion to cover bathhouse and locker room used in connection with the swimming pool. The accident or loss must fall clearly within the excepted risk before the insurer can avoid

the liability under the policy: Goldin, The Law of Insurance in Pennsylvania, 2d ed., vol. 1, p. 540, citing Kratzer v. The Pennsylvania Casualty Co., 238 Pa. 515 (1913).

While it is a well established principle of law that the interpretation of an indemnity contract most favorable to the insured should be adopted (Lewis et ux. v. Fidelity & Casualty Co., 304 Pa. 503 (1931)), and all ambiguities be resolved in favor of the insured, nevertheless the ambiguity must appear in the bond and cannot be read into it by a strained interpretation in order to permit recovery: Bradley v. Fidelity & Casualty Co. of New York, 141 Pa. Superior Ct. 85 (1940); Urian v. Scranton Life Ins. Co., 310 Pa. 144 (1933). Is it placing a strained interpretation upon the policy to hold that it covers injuries sustained by Louise Lookabaugh, a paid patron of the swimming pool (though she did not make use of the pool), while entering the bathhouse on her way to the locker, caused by the collapse of the bathhouse and storage shed situated thereon? We think not. To hold otherwise would limit the indemnity to matters occurring on the golf course alone. Certainly the parties contemplated a wider and larger indemnity when the premises in question, as alleged in paragraph 3 of the complaint, consisted of a golf course, club house and locker rooms, bowling alleys, bathhouses, swimming pool, and other improvements, for the use of members and the public, and it is all the more apparent that the coverage of the entire premises, excepting the expressly excluded part, was contemplated not only by the insured but by the insurer as well when the premiums were based upon $0.50 per $100 of all receipts from all activities.

The standard for the interpretation of words is their natural meaning to the parties who have contracted at the time and place where the contract is made, considering all the circumstances surrounding it: Foundation

and Construction Co. v. Franklin Trust Co. et al., 307 Pa. 10 (1932).

And now, October 31, 1947, the preliminary objections are overruled, with leave to defendant to plead over within 15 days from the date of this opinion.