# THE COMMISSIONERS OF LEONARDTOWN *v.* THE FIDELITY AND CASUALTY COMPANY OF NEW YORK

[No. 94, September Term, 1970.]

*Decided November 12, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*W. Hamilton Whiteford* and *Robert M. Wright,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*J. Roy Thompson, Jr.,* with whom was *John Jude O'Donnell* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

From August 1948 until June 1964 William M. Loker, Jr., served as Clerk and Treasurer for The Commissioners of Leonardtown (the Commissioners or the Town) in St. Mary's County. During this period, Loker converted to his own use funds belonging to the Town in an amount of some $100,000. His conviction on charges of embezzlement and larceny was affirmed by the Court of Special Appeals, *Loker v. State,* 2 Md. App. 1, 233 A. 2d 342 (1967) and by this Court, *Loker v. State,* 250 Md. 677, 245 A. 2d 814 (1968).

On 10 October 1949 the appellee, The Fidelity and Casualty Company of New York (the Surety Company) had written an official bond for Loker in the sum of $10,000, naming the Town as obligee. In 1966, after Loker's defalcations had been discovered, but before he had been convicted, the Town brought suit in the Circuit Court for St. Mary's County against Loker as principal and the Surety Company as surety on the bond. The case was removed to the Circuit Court for Calvert County, but trial was delayed pending the conclusion of the criminal proceedings. On 17 November 1969, the Town moved for summary judgment against Loker, which was unopposed, and judgment was entered in the Town's favor for $79,241.33. The case went to trial against the Surety Company on a stipulation of facts. From a judgment in the Town's favor against the Surety Company for $10,000 with interest from the date suit was brought and costs, the Town has appealed.

The threshold question is a narrow one: was the bond a cumulative one, in which case the Surety Company could be held for Loker's defalcations up to a limit of $10,000 in each of his one-year terms of office, or was the bond a continuing one, in which case the Surety Company's responsibility would be limited to $10,000, regardless of the total of the peculations which took place during the 14 years the bond was in force?

The resolution of this problem requires the recital of certain additional facts. Public Local Laws of St. Mary's County (1965) (the Statute) § 101 provides for the appointment of a Clerk and a Treasurer by the Commissioners of the Town:

> "The said Commissioners may meet and adjourn from time to time as they shall see fit, and at their first meeting after each election shall choose from their own body a president, who shall preside at their meetings, vote on all questions before them and remain in office until superseded by the appointment of a new president,

or until after a new election of Commissioners. They may also appoint a clerk to their Board, who may be one of their members, also a treasurer, who may be one of their members, and one and the same person may act as clerk and treasurer. Any of the above-named officers shall be subject to removal by a vote of the majority of the whole number of Commissioners, and the Commissioners shall prescribe the duties of clerk and treasurer and fix their compensation by ordinance, when not otherwise prescribed by this sub-title."

The immediately following § 102 of the Statute prescribes the duties of the Treasurer and requires that he give bond:

"The treasurer shall receive all moneys that may be collected for taxes, fees, fines or otherwise, by any law or ordinance directly or through the bailiff, collector or otherwise, and all such moneys shall be paid out only by order of the Commissioners. He shall subscribe to an oath for the faithful performance of his duties, and give bond to the State of Maryland in the sum of at least six hundred dollars, to be approved by the Commissioners, conditioned for the faithful discharge of his duties and such other condition as the Commissioners may prescribe, and his books shall be open to the inspection of the Commissioners and any taxpayer; and he shall, on or before the first day of May in each and every year, render a succinct and detailed statement of his receipts and disbursements for the fiscal year."

It was stipulated that Loker was first appointed Clerk and Treasurer by the Commissioners on 3 August 1948, and was reappointed at their 1949 organizational meeting to serve for a term of one year. For some unexplained

reason, he seems not to have got around to providing the required bond until 10 October 1949. When he did, he arranged for Bond No. 2247794 to be written by the Surety Company for a "term of office beginning on August 31, 1949 and ending on August 31, 1950" in the amount of $10,000, which named the Commissioners of the Town as obligee. Thereafter, in about June of each year, Loker would submit his resignation to the Commissioners at their organizational meeting and would be reappointed. Before October of each year, commencing in 1950 and until 1962, a premium notice referring to Bond No. 2247794 would be sent by the Surety Company to the Commissioners of the Town.[1] In each case, the notice bore the following legend:

> "This premium is paid and is accepted upon the express stipulation that the liability of the Company under the bond herein described shall not be cumulative, and that in no event shall the aggregate liability of the Company for any one or more defaults of the Principal, during any one or more years of the suretyship under the said bond, as extended by this or any other extension of the term thereof, exceed the amount set forth in said bond or any existing certificate changing the amount of said bond."

The annual premium of $100 was paid by the Town upon receipt of the notice.

An audit completed in September 1963 developed a discrepancy of some $10,000 in Loker's accounts, for which Loker acknowledged responsibility and made restitution. One month later Bond No. 2247794 was cancelled and Loker arranged to provide a new bond, No. F-177598, in the penal sum of $15,000, also written by the Surety Company for the year commencing 10 October 1963. In connection with the issuance of the new bond the Surety

---

1. The premium notice of 10 October 1962 is not in the record. Whether or not it was issued is of no consequence in view of the result we reach.

Company required a certificate from the Town that Loker's accounts had been examined and were found to be in good order. It was a further audit made in 1964, respecting years prior to 1963, that developed the enormity of Loker's peculations. Bond No. F-177598 was cancelled as of 1 July 1964 at the request of the Town, and is not at issue in this case.

That Bond No. 2247794 written by the Surety Company was at variance with the requirements of § 102 of the Statute is not disputed. The bond was in the penal sum of $10,000 which exceeded the statutory minimum of $600, presumably at the instance of the Commissioners, although the record does not reflect any formal action by the Commissioners. The Obligee named by the bond was the Commissioners, and not the State, as required under the Statute. Finally, Loker's term was stated to begin on 31 August, yet the anniversary date of the bond was 10 October, and neither date was consistent with the day in early June when Loker's successive one-year terms actually commenced. These discrepancies were not deemed material by the lower court, and the point was not pressed on appeal.

Whether an official bond is to be construed as cumulative or continuing rests largely on the circumstances of each case. Had Loker furnished a new bond each year, either of his own volition (absent an unambiguous provision to the contrary) or in compliance with a statutory mandate, the bond might have been regarded as cumulative. Had the bond been written for an indefinite term and renewal premiums been paid each year, the bond would be regarded as a continuing one, unless it was clearly otherwise provided.

However, when a fidelity bond is issued for a definite term and is periodically renewed by certificates which refer to and adopt the terms of the original instrument, particularly when the renewal notice, as the Surety Company's did, clearly provides that the premium is accepted for the renewal of the original bond and that the surety's liability shall not be cumulative, the weight of authority

regards the bond as a continuing one, and the surety's total liability is limited to the amount stated in the original bond. *Massachusetts Bonding & Ins. Co. v. Julius Seidel Lumber Co.*, 279 F. 2d 861 (8th Cir. 1960) ; *Troy v. American Fidelity Co.*, 120 Vt. 410, 143 A. 2d 469 (1958) ; *United States v. Maryland Cas. Co.*, 129 F. Supp. 45 (D. Md. 1955) ; *Columbia Hospital for Women & Lying-In Asylum v. United States Fidelity & Guaranty Co.*, 88 U. S. App. D. C. 251, 188 F. 2d 654, *cert. den.* 342 U. S. 817, 72 S. Ct. 31, 96 L. Ed. 618 (1951) ; *Bradley v. Fidelity & Cas. Co. of New York*, 141 Pa. Super. 85, 14 A. 2d 894 (1940) ; *Aetna Cas. & Surety Co. v. First Nat'l Bank of Weatherly, Pa.*, 103 F. 2d 977 (3d Cir. 1939) ; *Hack v. American Surety Co. of New York*, 96 F. 2d 939 at 945 (7th Cir.), *cert. den.* 305 U. S. 631, 59 S. Ct. 95, 83 L. Ed. 405 (1938), *reh. den.* 305 U. S. 671, 59 S. Ct. 144, 83 L. Ed. 435 (1938). See also 17 *Couch on Insurance* §§ 68:46-68:48 (2d ed. 1967) at 685-89; cases collected in Annotations, 7 A.L.R.2d 946 (1949) and 42 A.L.R. 834 (1926) ; and Story, *Cumulative Liability Trends,* 25 Insurance Law Journal 306 (1958) ; Roth, *Cumulative Liability Under Surety Bonds,* 1951 A.B.A. Sect. Ins. Law 95; Notes and Comments, 25 N.C. L. Rev. 341 (1947) and 27 Mich. L. Rev. 442 (1929).

The cases on which the Town principally relies, *Metropolitan Cas. Co. of New York v. Billings,* 150 Conn. 603, 192 A. 2d 541 (1963) and *Jaeger Mfg. Co. v. Massachusetts Bonding & Ins. Co.,* 229 Iowa 158, 294 N. W. 268 (1940) which involved statutory requirements that a bond be posted as a condition to the issuance of an annual license do not, in our opinion, support a contrary result, because statutory requirements were held to take precedence over the provisions of a bond furnished in compliance with the statute.

As the Surety Company points out, the provisions of § 102 of the Statute should be viewed in the light of § 104, which prescribes the bond to be posted by the town's collector of taxes:

"The Commissioners may levy not later than thirty (30) days before the first day of July annually on the assessable property of the town or corporation a sum sufficient for all general purposes, such taxes not to exceed One Dollar on the one hundred dollars' worth of property. Such taxes, when levied, shall be a preferred lien upon the property assessed, and shall be due and demandable on the first Monday in August of each year. After being levied for the collection of taxes so levied, from which time said taxes shall draw six per cent interest, the Commissioners shall annually appoint a collector of taxes within the corporate limits of said town, who may be the bailiff of said town, on or before the second Monday of July in each year, and the *said collector shall within ten days after his appointment, give bond to the State of Maryland in double the amount of taxes to be collected and conditioned upon the faithful performance of the trust reposed in him as collector*, with sureties to be approved by the Commissioners, and on failure to give bond within the time specified, the Commissioners shall appoint another person as collector." (Emphasis supplied)

It is quite apparent that the General Assembly, aware of the difference between a cumulative bond and a continuing bond, chose to require the collector of taxes to provide the former and the treasurer the latter.

Both parties refer us to *United States Fidelity & Guaranty Co. v. Crown Cork & Seal Co.*, 145 Md. 513, 125 A. 818 (1924), relied upon by the court below, a case which would appear to be authority for the proposition that in the absence of contrary provisions, a schedule fidelity bond written for a one-year term and renewed annually thereafter is a continuing one only so long as the penalty of the bond remains unchanged. When the limits were

altered for the employee whose fraud was later discovered, the Court held that a new contract came into being, upon which recovery could be had, irrespective of the recovery under the bond for defalcations during an earlier period when the limits were different.

In holding that the Surety Company's liability was limited to $10,000, the lower court was not required to reach two other points made by the Town: that recovery could be had on the bond for amounts which Loker had paid himself as salary beyond that authorized by the Commissioners; and for the "less cash" transactions: amounts which Loker, who was not authorized to make withdrawals from the Town's bank accounts on his own signature, had received in cash incident to the deposit of checks drawn to the Town's order.

Because we reach the same result, it is unnecessary for us to determine whether the excessive salary which Loker paid himself and the "less cash" items which he retained were within the coverage of the bond. It is quite apparent that the $10,000 limit had been exhausted by misappropriations during the period 10 October 1949 to 10 October 1954, which totalled $11,732.37, apart from salary overpayments of $250, and that thereafter the bond offered no protection to the Town.

The Surety Company, however, cannot have it both ways. The lower court should have required it to refund the annual premium paid each year commencing 10 October 1954 and continuing to and including 10 October 1962, nine payments of $100 each, with interest from the date of payment. We see no reason why premiums received after the Surety Company's liability had been exhausted, but when the peculations had not been discovered, should not be returned, *Hack v. American Surety Co. of New York, supra,* 96 F. 2d 939 at 945.

The Town also complains that interest was allowed only from the date when suit was instituted, when it should have been allowed from 29 July 1965, the date when demand was made on the surety. There are exceptions to the rule that the allowance of interest ordinarily lies in

the discretion of the jury or the trial court sitting without a jury, and one such exception is the allowance of interest on a bond, which runs from the date the shortage occurred, *McShane & Rodgers v. The Howard Bank,* 73 Md. 135, 159, 20 A. 776 (1890). See also, *Atlantic States Constr. Co. v. Drummond & Co., Inc.,* 251 Md. 77, 85, 246 A. 2d 251 (1968). However, *Social Security Administration, Baltimore Federal Credit Union v. Employer's Mutual Liability Ins. Co. of Wisconsin,* 234 Md. 493, 497, 199 A. 2d 918 (1964) is authority for the proposition that if "* * * the amount of stolen corpus equalled or exceeded the full penalty of the bond or insurance policy * * * the guarantor could not be liable for any additional amount, including interest which was part of the loss, but only, if at all, for interest due because he did not pay the loss when he should have." Under the circumstances of this case, where the amount of the claim exceeded the limit of the bond, interest could not run from the date of the defalcation, but should have been allowed from 29 July 1965, when payment was demanded.

Judgment should have been entered in favor of the Town for $10,000 with interest from 29 July 1965 and for the $100 premium paid each year from October 1954 to and including October 1962, with interest from date of payment, with costs.

> *Judgment in favor of the Commissioners of Leonardtown entered against The Fidelity and Casualty Company of New York for $10,900 with interest on $10,000 from 29 July 1965, and with interest from date of payment on bond premiums aggregating $900 paid at an annual rate of $100 in each year from 1954 to and including 1962, with costs.*