425 A.2d 803

**EDDYSTONE FIRE COMPANY NO. 1, Appellant**

**v.**

**The CONTINENTAL INSURANCE COMPANIES, Phoenix Assurance Company of New York, National Ben Franklin Insurance Company of Pittsburgh, National Ben Franklin Insurance Company, Fireman's Insurance Company of Newark, N.J.**

**EDDYSTONE FIRE COMPANY NO. 1,**

**v.**

**The CONTINENTAL INSURANCE COMPANIES, Phoenix Assurance Company of New York, National Ben Franklin Insurance Company of Pittsburgh, National Ben Franklin Insurance Company, Fireman's Insurance Company of Newark, N.J., Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1979.

Filed Feb. 13, 1981.

262

Joseph E. Lastowka, Jr., Media, for appellant (at No. 151) and for appellee (at No. 186).

Andrew J. Forbes, Media, for appellee (at No. 151) and for appellant (at No. 186).

Before SPAETH, CAVANAUGH and O'KICKI, JJ.*

CAVANAUGH, Judge:

Plaintiff, Eddystone Fire Company, No. 1 [Eddystone], brought suit against several insurance companies, collectively known as the Continental Insurance Companies [Continental], seeking to recover, pursuant to certain fidelity bonds, monies embezzled by Eddystone's treasurer. The trial judge, sitting nonjury, ruled that Eddystone suffered losses in the amount of $10,495 during the years 1971 through 1974 and that, under the terms of the fidelity agreement, Continental was liable for such losses but only to the extent of $5,000.

* Judge Joseph F. O'Kicki of the Court of Common Pleas of Cambria County, is sitting by designation.

Continental filed exceptions to this ruling alleging that Eddystone is not entitled to recovery because (1) it failed to establish that it incurred a loss as defined in the bonding contract and (2) it did not comply with the provisions of the bonds requiring it to examine and verify the books of account. Eddystone excepted to that portion of the ruling limiting its recovery to $5,000. Eddystone contends that the fidelity bonds, issued yearly by different companies, are separate and distinct contracts and that it is entitled to judgments from each company for losses it sustained over the three-year period. All exceptions were denied and both parties appealed. We affirm.

■ We first dispose of Continental's challenge to the adequacy of the evidence establishing its liability. It is well established that a trial judge's findings of fact in a nonjury trial have the weight of a jury verdict and cannot be disturbed on appeal unless unsupported by competent evidence in the record or predicated upon errors of law. *Courts v. Campbell*, 245 Pa.Super. 326, 331, 369 A.2d 425, 428 (1976). Furthermore, the evidence must be viewed in the light most favorable to the verdict winner. *Courts v. Campbell*, supra.

Viewed in this light, the evidence reveals that from 1969 through 1975, Continental, through its agent, Robert S. Maxam, issued yearly fidelity bonds insuring Eddystone against any losses it might sustain as a result of dishonest acts committed by its treasurer and assistant treasurer. The annual premium was $25.00 and recovery was expressly limited to a maximum of $5,000 for each named officer. Pursuant to the Schedule of Statements of each bond, Eddystone agreed to conduct an annual examination and verification of the books of account kept by each named official.

It was admitted in the pleadings that Eddystone properly sent to Continental prompt notice of its claim. At trial, a certified public accountant, who examined Eddystone's books in 1974, testified that as a result of the dishonesty of William Rankin, now deceased, who served as treasurer, losses were incurred by Eddystone during the periods of 1971 to 1972, 1973 and 1974. The loss sustained in 1971 to

1972 amounted to $495, while the losses sustained in 1973 and 1974 each exceeded $5,000. The secretary of Eddystone confirmed that an annual audit of the treasurer's books was conducted by a committee elected from the members of the fire company and that this committee reported that the books were in order. Nevertheless, Continental argues that the certified public accountant testified that a layman who would have examined the books would have discovered the discrepancy between the treasurer's reports and the bank statements. Such testimony, it argues, proves that the Committee did not examine the books. This argument has no support in the record since the certified public accountant expressly declined to offer an opinion that a layman would have discovered the discrepancy.

■ Since the secretary's testimony was sufficient to support the trial judge's ruling that Eddystone fully complied with the terms of the fidelity agreement, Continental is liable for the loss suffered by Eddystone. Accordingly, Continental's exceptions were properly denied.[1]

Eddystone contends that because the three fidelity bonds in issue are separate and distinct contracts it is entitled to recover up to $5,000 for losses sustained during the term of each bond. The basis of this agreement is that each bond refers to a different insurance company. While at first blush this argument is persuasive, closer analysis reveals a continuing bonding scheme with express noncumulative provisions which operate to restrict Eddystone's total recovery to a maximum of $5,000.

■ Whether a bond imposes cumulative liability is a question that must be determined in light of the particular facts of each case and the provisions of the bond under which the claim arose. *Bradley v. Fidelity & Casualty Co. of New York*, 141 Pa.Super. 85, 14 A.2d 894 (1940). Because a fidelity bond is a contract of insurance, the rules governing the interpretation of insurance policies will apply. *Booker*

1. Continental also argues that hearsay was erroneously admitted into evidence. This contention is waived since it was not included in its exceptions. Pa.R.C.P. No. 1038(d).

*Brothers, Inc. v. American Casualty Co.*, 57 D. & C.2d 353 (1971), *aff'd per curiam*, 221 Pa.Super. 762, 291 A.2d 896 (1972). Accordingly, our duty is to determine the intent of the parties as manifested by the language of the written agreement. *Mohn v. American Casualty Co.*, 458 Pa. 576, 326 A.2d 346 (1974); *Central Dauphin School District v. American Casualty Co.*, 271 Pa.Super. 218, 412 A.2d 892 (1979). The agreement must be read in its entirety and, where the language is clear and unambiguous, its terms are to be given their plain and ordinary meaning. *Central Dauphin School District v. American Casualty Co., supra; Blocker v. Aetna Casualty & Surety Co.*, 232 Pa.Super. 111, 332 A.2d 476 (1975).

■ In the instant case, each of the three fidelity bonds designate a different insurance carrier as the "Company." The bond in effect during the years 1969 and 1970 (BND 173–11–16) refers to the Phoenix Assurance Co. of New York; the bond in effect during 1971 and 1972 (BND 181–68–09) refers to the National Ben Franklin Insurance Co. of Pittsburgh; and the bond in effect during 1973 and 1974 (BND 190–87–94) refers to the Fireman's Insurance Co. of Newark, New Jersey. In all other respects, however, the bonds are identical. All three contain the following language declaring that the insurer's liability under the bonds is not cumulative:

2. . . . Regardless of the number of years this bond shall continue in force and the number of premiums which shall be payable or paid, the Company's liability as to any Official covered hereunder shall not be cumulative from year to year or from period to period.

. . . . .

8. If this bond is issued as a continuation of a bond previously issued by the Company to the Assured, it is understood and agreed that in order that the change from such prior bond to this bond may not impair the Assured's interests, this bond shall be construed to cover every loss within the period of the prior bond that would have been recoverable under the prior bond had the prior bond continued in force.

PROVIDED:

. . . . .

(d) That the aggregate liability of the Company on account of any loss or losses, whether sustained within the term of the prior bond or within the term of this bond, or partly within the term of each, shall in no event exceed the amount carried under this bond on the Official causing such loss or losses.

Such provisions limiting an insurer's liability have been held valid where the bond is one that continues over a period of years. *E. g., Scranton Volunteer Fire Co. v. United States Fidelity and Guaranty Co.,* 450 F.2d 775 (2d Cir. 1971); *Columbia Hospital for Women and Lying-In Asylum v. United States Fidelity and Guaranty Co.,* 188 F.2d 654 (D.C.Cir.1951); *Leonardtown v. Fidelity & Casualty Co. of New York,* 259 Md. 532, 270 A.2d 788 (1970); *Bradley v. Fidelity & Casualty Co. of New York, supra; Town of Troy v. American Fidelity Co.,* 120 Vt. 410, 143 A.2d 469 (1958); 7 A.L.R.2d 946. *Cf: Exchange Building Association of Fairhill v. Indemnity Insurance Co.,* 338 Pa. 562, 12 A.2d 924 (1940). The issue we must resolve is whether the bonds manifest an intention by Eddystone and Continental to enter a continuing bonding scheme.

An examination of the bonds reveals that, despite the designation of separate companies, the bonds are part of a continuing bonding plan issued by Continental through its agent, Robert S. Maxam. As previously noted, the bonds are identical in form and content. On the face sheet of each bond, reference is made to the Continental Insurance Companies and its general office address. On the continuation certificate, this address is listed as the address of the named company. Furthermore, each bond is signed by the same person as Secretary of the Company. Most significantly, each bond contains the following clause:

The Assured by the acceptance of this
bond, gives notice to the Company terminating or cancelling prior bond(s) No(s). ＿＿＿ such termination or cancella-

tion to be effective as of the time this bond becomes effective.

In the blank space is inserted the bond number of the preceding bond. Thus, Eddystone, by accepting each yearly bond, expressly agreed to cancel or terminate the prior bond. This is a clear indication that each bond was issued by Continental as a continuation of the preceding bond which was no longer to be effective. As the bonds unequivocally limit Continental's aggregate liability to $5,000 per named official, the trial court correctly entered a verdict against Continental for $5,000.

Affirmed.

O'KICKI, Judge, dissenting:

As the Appellee Defendant Insurance Companies in this case, points out, there are three issues arising from the facts in this case: (1) Did a loss occur within the meaning of the bond regarding the performance of the treasurer? (2) Did the Plaintiff, Volunteer Fire Company, fulfill conditions precedent to recovery on the bond? (3) Are bonds issued by separate member companies of an association cumulative in their coverage at least between the companies?

In an oral Opinion from the bench, the Trial Court found that, (1) losses did occur within the meaning of the applicable bond; (2) that the Plaintiff, Volunteer Fire Company, did perform an annual Audit, sufficient to comply with the terms of the bond; (3) that the three companies which issued the bonds were members of the Continental Insurance Companies group and that as they had this association, they would be deemed one company for the purposes of determining the total liability on the loss and limited such liability to Five Thousand 00/100 ($5,000.00) Dollars on all three policies.

The Appellee, Defendant Insurance Company, raised an issue both at trial and in his argument before this Court that there could have been undisclosed Savings Accounts in which all the losses were really present. The chief witness for the Plaintiff, Daniel Edward Mingis, C.P.A., testified

that he conducted a thorough Audit of the Fire Company's accounts following the death of William Rankin, the treasurer for the Volunteer Fire Company. During his investigation of the accounts, he testified that he found no evidence of any additional savings accounts. The Trial Judge's discretion as fact finder must surely stand against the unfounded possibility raised by the defense. A verdict cannot be founded upon such a guess as the defense propounded. *Warden v. Lyons Transportation Lines, Inc.*, 432 Pa. 495, 248 A.2d 313 (1968).

The Defendants, Appellees, also argued that recovery should not be had on the bonds because of the failure of the Volunteer Fire Company to fulfill conditions precedent to their recovery on the bond. That condition precedent was:

" . . . the assured agrees to examine and verify the books of account kept and the money and property handled by each official, at least annually."

There was testimony at trial from Paul F. Sides, III, that as Secretary of the Volunteer Fire Company, he personally knew that reports were given by an Audit Committee every year that the books were in order and the accounts sufficient. The Attorney for the Defendant Insurance Companies, in his Brief, claimed that "The Accountant who testified on behalf of the Plaintiff conceded that if even a cursory review of the books of account of the Treasurer had been conducted, even by laymen, the alleged defalcations would have been immediately apparent inasmuch as the amounts reported on deposit greatly exceeded the amounts actually shown in the checking and savings account statements." The actual testimony was as follows:

"Q. What was the actual balance in the account?

A. The balance on the bank statement was $392.05.

Q. Now, that you don't have to be a CPA to know that there is something fishy about that situation, do you?

A. No, sir.

Q. Now, a layman can look at a bank statement and a report from a treasurer as to the alleged balance in the account and determine immediately that there is a defi-

ciency of some, what, $10,300.00 in that particular instance?

A. Quite a bit, yes.

"Q. And you feel that if one had conducted an examination to verify the books of the accounts kept by Mr. Rankin on a yearly basis, that those differences would have jumped out immediately to whomever conducted that examination?

A. I believe we went through this before and I guess my answers still the same. It would depend on whether that one was qualified to perform such an examination. In my own case, yes, absolutely. That would be one of the first places I would look. I can't speak for what someone else without those qualifications could do or would do."

As is evident from this excerpt of the Notes of Testimony, taken as a whole, the accountant went on to qualify his statement concerning laymen and their ability to verify the books. In consideration of this and upon going through the record, we find the C.P.A. made no statement that would contradict the Trial Judge's finding that Audits were made on a yearly basis consistent with Statement 3 of the Schedule of Coverage of the Bond.

The issue that divides me from my colleagues is whether there is coverage by one insurance company or three (the National Ben Franklin Insurance Company of Pittsburgh, the Firemen's Insurance Fund of Newark, New Jersey, and the Phoenix Assurance Company of New York.) In the issued policy of each company, there is a Section which provides:

"If this bond is issued as a continuation of a bond previously issued by the Company to the assured, it is understood and agreed that in order that the change from such prior bond to this bond may not impair the assured's interests, this bond shall be construed to cover every loss within the period of the prior bond that would have been recoverable under the prior bond had the prior bond continued in force.

PROVIDED:

... (d) That the aggregate liability of the Company on account of any loss or losses, whether sustained within the term of the prior bond or within the term of this bond, or partly within the term of each, shall in no event exceed the amount carried under this bond on the Official causing such loss or losses."

As was held in *Scranton Volunteer Fire Company v. United States Fidelity and Guarantee Co.*, 450 F.2d 775 (2d Cir. 1971), this language does limit the total recovery from the insurance company to Five Thousand 00/100 ($5,000.00) Dollars, no matter how many renewals, no matter how great a time period the Insurance Contract with that Company covered. However, to make the intuitive legal leap as the Defendant Insurance Company has urged and the Trial Judge did, is to equate all three insurance companies with each other under the generalized rubric of The Continental Group. The limitation of liability in this case is unwarranted under that *Scranton* holding. If it properly understood the meaning of Clause 8(d), as the Defendant insurance company intended it, any insured should seek insurance coverage with a different insurance company each year that it sought such coverage. The difference is that if the insurance is sought with different companies, then the same yearly premium would provide Five Thousand 00/100 ($5,000.00) Dollars of coverage each year that an insurance policy was in force. Whereas, if the insurance coverage is kept with the same company for several years, then the total liability is limited to Five Thousand 00/100 ($5,000.00) Dollars. Does not an insured contract for $5,000. worth of protection in EACH YEAR? In 1936, the Third Circuit Court of Appeals, in *Standard Acc. Ins. Co. v. Collingdale State Bank*, 85 F.2d 375, found that a practical business concern would necessarily seek more insurance coverage for the premium rather than less. The Court said:

"We are the more persuaded to this view by the improbability that a practical concern, such as the Appellee herein, would pay one company two premiums for a single Right of Recovery if it could by payment of the same sum to two

separate insurance carriers procure recoverable insurance for two periods."

If one fact is clear from the record in this case, it is that the Eddystone Fire Co., No. 1 is neither a sophisticated nor even necessarily a practical business concern. Volunteer Firemen work at that profession on a purely part-time basis providing a service to the community while they are not working at other jobs for their livings. It cannot be expected that they fully comprehend and understand the complex issues presented in any insurance contract drafted by experts for the insurance companies.

The issue then becomes, in this case, whether the paragraph as drafted by the Insurance Company, and construed according to the applicable law of construction of contracts, provides for consideration as one, all of the insurable policies in this case? Any ambiguity must be construed against the drafter of the instrument. *Evans v. Baltimore Life Ins. Co.*, 216 Pa.Super. 425, 268 A.2d 155 (1970). It should be noted that in no place within the language of the contract itself is there a reference to the Continental Insurance Group. The envelope cover (which is not part of the contract) on each insurance policy contains in the middle of it a picture of a Revolutionary Soldier and a small ⅞'s inch by ⅜'s inch block on the middle of the front page which states, "The Continental Insurance Company." At all points within the Indemnity Contract, where the form refers to "Company", the name of the individual Insurance Company is typed in. On the body of the agreement there is no mention of the term, "Continental Group." The listed name on the face sheet is not sufficiently clear to provide notice to the insured that any Insurance Company doing business under that heading is merely a branch of the Continental Insurance Company. Indeed, even if the term, "The Continental Group Insurance Companies" is taken as part of the contract, such a designation in no way explains the relationship of the component companies to the other.

On the attached schedule, which it should be pointed out was not signed by the insured, it is indicated:

"The assured, by the acceptance of this bond, gives notice to the Company terminating or cancelling prior bond(s) no (s) BND 173 1116 such termination or cancellation to be effective as of the time this bond becomes effective."

The Trial Court (en banc) used this language to show a common bonding scheme that rendered the Ben Franklin Insurance, the Phoenix Assurance Company, and the Fireman's Insurance Company a single Insurance Company. The Court en banc further determined that this language absolutely ended all liability on prior bonds when the new one was accepted. Even a cursory examination of Paragraph 8 of the Indemnification Agreement shows that termination of the bond does not end the liability under the prior bond for acts which occurred prior to its termination. Sub-Section (d) of Paragraph 8 provides for liability to continue under the prior bonds, even though they are terminated.

If the Insurance Company wanted to clearly and unambiguously indicate to the insured fire company that for the purposes of determining total liability any Insurance Company within the Continental Group of Insurance Companies was to be considered as a Company within the meaning of Paragraph, Sub-Section (d), it could have stated at every point in the contract where it indicated the term "Company," the Continental Group Insurance Companies, as an alternative, the Insurance Companies could have indicated on the first page of the agreement, underneath the name of the individual Company, the term "A Continental Group Insurance Company." The reasons for this lack of clarification are not presented to this Court. The counsel for the Insurance Company presented no testimony at Trial, nor did he present any exhibits into the record to indicate the peculiar organization of the Continental Group Insurance Companies. The Court en banc and the Trial Court, reached the conclusion that all Companies were to be treated as one, without any significant evidence at all on the record indicating a relationship between them. The lower Court grasps at the face sheet, which is not even a part of the contract, as showing some sort of legal glue that ties together three

Companies. It is the opinion of this Judge that this finding and conclusion of the lower Court was in error. Accordingly, the decision should be reversed and remanded on this issue only.